**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) SAMANTHA HARTANOVICH, on behalf of herself and others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| vs. | ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| (1) CREW INTERNATIONAL, LLC, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |

Plaintiff Samantha Hartanovich ("Plaintiff") brings this Class Action against Crew International, LLC ("Defendant" or "Cali White" herein), on behalf of herself and all others similarly situated, and alleges the following based on her personal knowledge and the investigation of her counsel:

## I.   INTRODUCTION

1.     This is a consumer Class Action against Defendant, an oral care company, for its false advertising and unfair and deceptive marketing practices in connection with the sale of a line of dental products under the brand name Cali White, which contain activated charcoal.

2.     Activated charcoal is highly porous and has adsorptive qualities that can be useful in certain contexts. In recent years, health and beauty products containing activated charcoal have become a consumer sensation. Marketers, celebrities and social media influencers tout a variety of activated charcoal products for purported 'detoxifying' properties and other enhanced wellbeing and health benefits. Consumers have been willing to pay a premium for these charcoal products.

1

3.      Cali White sells oral care products containing activated charcoal, including the products: "Cali White Activated Charcoal and Coconut Oil Teeth Whitening Toothpaste"[1] and "Cali White Activated Charcoal Teeth Whitening Powder."[2] Hereinafter, these products as well as any other Cali White toothpastes and toothpowders containing activated charcoal that have been available for purchase within the relevant statute(s) of limitations, will be referred to collectively herein as the "**Charcoal Dentifrices**."[3]

4.      Cali White promotes its Charcoal Dentifrices as whitening, detoxifying, safe for enamel and gums, and generally healthy, effective and beneficial for daily, long-term oral care. Claims printed on the product packaging and labeling for the Charcoal Dentifrices include: "nature's answer to teeth whitening," "most effective whitening and detoxifying ingredients on earth," "nature's whitening toothpaste," "oral detox," and others. The same and similar claims are made on the Cali White website, on Amazon.com, and elsewhere in online marketing and print advertising. Additional claims made online include but are not limited to: "radical whitening and detox," "zero tooth sensitivity," "100% enamel safe," "oral detox to promote gum health," "prevent any gum irritation," "clinically proven," "dentist recommended," and "determined safe for lifetime use by the FDA."  The products bear the name "Cali White" and are claimed to be made by a "real established company in California," and bear a California made logo.

5.       Cali White's marketing strategy has been very successful, and the Charcoal Dentifrices have become one of the top sellers in its product category. However, that success is

---

[1] https://caliwhite.com/collections/charcoal-products/products/cali-white-activated-charcoal-and-organic-coconut-oil-teeth-whitening-toothpaste-mint-4-0-oz (last accessed November 26, 2019).
[2] https://caliwhite.com/collections/charcoal-products/products/cali-white-activated-charcoal-teeth-whitening-powder-all-natural-tooth-whitener-bonus-binchotan-charcoal-bamboo-toothbrush (last accessed November 26, 2019).
[3] Dentifrices are pastes or powders used to clean teeth.

built around messaging that is misleading and deceptive to consumers, and that omits material information concerning the safety and efficacy of use of charcoal in oral care.

6.      The Federal Trade Commission ("FTC") requires that marketers ensure that advertising claims are truthful, not misleading, and supported by a reasonable basis before disseminating such claims. The FTC and the Federal Drug Administration ("FDA") further require that, for the types of products and claims at issue, Cali White must have competent and reliable scientific evidence to substantiate the claims conveyed.  However, despite its legal obligations, it does not appear Cali White possessed or possesses the requisite evidence to substantiate its claims concerning the benefits and safety of its Charcoal Dentifrices.

7.      In fact, it appears such evidence does not actually exist. The consensus of respected dentists, researchers and industry experts is that there is a dearth of scientific substantiation on the safety and efficacy of activated charcoal in dentifrice, and risk of harm. For example, in 2017, findings published in the Journal of the American Dental Association (JADA) concluded that there is insufficient laboratory or clinical data to substantiate the safety and efficacy of dentifrice containing activated charcoal, and cautioned against its use. In 2019 the British Dental Journal (BDJ), again confirmed a lack of substantiation, and expressed concern that charcoal toothpastes are a "marketing gimmick" that could, in fact, cause harm to oral health and structures, aesthetic appearance. Many qualified dental professionals have also spoken out on these findings and other safety and health concerns, and have cautioned against the use of charcoal dentifrices. Dr. Ada Cooper, a spokesperson for the American Dental Association, recently commented on the lack of safety substantiation (and reported hazards) for charcoal dentifrice, and stated: "Just because something is popular doesn't mean it's safe."[4]

---

[4] "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/]. (emphasis added).

8.      Notably, the American Dental Association ("ADA") has not approved *any* charcoal dentifrices for its ADA Seal of Acceptance (the "ADA Seal"). The ADA Seal certifies the safety and efficacy of a dentifrice, based on clinical data and research.

9.      Cali White knew or should have known that many of its claims regarding the Charcoal Dentifrices lacked a credible basis or substantiation, and that they were misleading, deceptive, and/or outright false. It also omitted material facts, including that scientific literature counter-indicates the safety and efficacy of charcoal in oral care use. Such representations and omissions were material and likely to deceive a reasonable consumer, yet Cali White nonetheless proceeded with its marketing campaign, and continues to do so.

10.      In addition to its extreme and inaccurate claims on the benefits and safety of the Charcoal Dentifrices, Cali White engaged in multiple deceptive practices to induce consumers to take additional stock in, and rely upon, their marketing claims. For example, Cali White has misled consumers to believe its claims are highly substantiated and endorsed by third parties, with its claims that the Charcoal Dentifrices are "dentist recommended," that their safety and efficacy has been "clinically proven," and even that the FDA has determined them safe for lifetime use (which is false). Cali White also claims superior safety and quality to other comparable products, and employs misleading official-looking stamps, including a false "Made in California" logo.

11.      For several years Cali White has advertised the Charcoal Dentifrices at a deep 'discount' from a much higher listed full retail price; however, the price reduction was not a true bargain, but instead another deceptive practice, intended to induce consumers to attribute high value to its products, as well to make a quick purchase during the 'sale.'

12.      Cali White intentionally employed its misleading claims, labels, false logos and deceptive pricing tactics in order to secure consumer confidence in its products and its brand, and

it did so despite its awareness of the deceptive nature of its representations and non-disclosures. In fact, Cali White employed them precisely *because* of their likelihood to deceive, in order to induce consumer reliance and the purchase of the Charcoal Dentifrices.

13.     Plaintiff and members of the potential classes reasonably relied upon and attributed value to Cali White's claims and false promises, and did not know, nor could have known, the many ways in which Cali White was omitting material information and fundamentally misrepresenting the benefits, effectiveness, value, safety and other qualities of the products. As a direct and proximate result of Cali White's misrepresentations, material omissions and other deceptive practices in its marketing and labeling, Plaintiff and others similarly situated have suffered out-of-pocket losses from their purchase of one or more Charcoal Dentifrices. They have paid for products that (i) do not perform as promised by 'naturally whitening' or detoxifying; (ii) are not as safe as represented, and do not in fact have the clinical testing, third-party endorsements or regulatory approvals Cali White indicated they did; (iii) do not bear other properties and value as represented; (iv) do not meet basic oral hygiene needs that other, less expensive dentifrices would; and (v) may in fact be harmful or dangerous to oral health and aesthetics. Furthermore, some consumers have experienced the negative effects that activated charcoal can cause, including discoloration of the gumline, gum irritation, excessive abrasion of tooth enamel and dentin, yellowing of the teeth, and damage to dental implants.

14.     Cali White prioritizes its own profits and jeopardizes consumer safety when it makes unsubstantiated claims on the safety of the Charcoal Dentifrices, and does so without disclosing material facts, including the potential hazards of using charcoal in dentifrice. It does so despite its legal duties to ensure the safety of its products and to substantiate its claims on the same. Moreover, Cali White's conduct is all the more egregious when it further claims that the products

are "dentist recommended," "clinically proven" and approved by the FDA. Cali White knows or should know that its claims on the products themselves, as well as its claims on the purported level of substantiation for the same, are untrue. As such, Cali White's conduct in its marketing and sale of the Charcoal Dentifrices was, and continues to be, substantially injurious to consumers as well as immoral, unethical, unconscionable and in contravention of public policy.

15.    Cali White's false and misleading claims and omissions enabled it to sell the Charcoal Dentifrices in great quantity. To wit, Defendant's "Cali White Activated Charcoal and Coconut Oil Teeth Whitening Toothpaste" is the #1 Best Seller on Amazon.com for "Teeth Whitening Products" and the #73 Best Seller on Amazon.com for Health & Household.[5]

16.    Defendant's conduct is in violation of Oklahoma consumer laws and constitutes unlawful practices under the Oklahoma Consumer Protection Act (15 Okla. Stat. § 751 *et seq.*), statutory deceit (76 Okla. Stat. §§ 1-4), and unfair and deceptive trade practices under the Oklahoma Deceptive Trade Practices Act (78 Okla. Stat. § 51 *et seq.*). Defendant's acts and omissions also constitute false advertising, unfair competition and/or unfair, unconscionable, deceptive or unlawful acts or business practices under the consumer protection and deceptive trade practices laws of various other states, including but not limited to the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201 *et seq.*). Defendant's misrepresentation of the geographic origin of the Charcoal Dentifrices is unlawful under Oklahoma and other states' trade practices laws (in addition to California's labeling program and California state law). Defendant's conduct also constitutes a breach of the UCC express and implied warranties (as adopted and codified by Oklahoma and other various states), as well as violations of common law, and Defendant was unjustly enriched as a result.

---

[5] https://www.amazon.com/Cali-White-ACTIVATED-WHITENING-TOOTHPASTE/dp/B06WRS71N8/ (last accessed November 26, 2019).

17.    Plaintiff brings this proposed Class Action on behalf of herself and other similarly situated consumers in the United States who purchased Cali White Charcoal Dentifrices within the relevant statute(s) of limitations period(s) (the "Nationwide Class"), as well as a proposed subclass of members who purchased the Charcoal Dentifrices in the state of Oklahoma (the "OK Subclass"), and alternative, yet-to-be-determined subclasses comprised of members who purchased the Charcoal Dentifrices in other states, potentially grouped based on the material similarity of applicable state laws (the Nationwide Class, the OK Subclass and the alternatively proposed subclasses are collectively referred to herein as the "Classes"). For the alleged violations of state statutory law and common law, Plaintiff seeks, on behalf of herself and the members of the Classes, to recover compensatory and statutory damages, treble or punitive damages as available, attorneys' fees and costs, as well as declaratory and injunctive relief.

## II.    PARTIES

18.    Plaintiff Samantha Hartanovich is a natural person and a citizen of Oklahoma. She lives within the Northern District of Oklahoma. On October 7, 2017, February 16, 2018 and September 14, 2018 Ms. Hartanovich purchased Cali White Activated Charcoal and Coconut Oil Teeth Whitening Toothpaste on Amazon.com. Ms. Hartanovich purchased the toothpaste in reliance on the representations made in Cali White's marketing and advertisements online and on the toothpaste packaging and labeling. Based thereon, she believed the toothpaste was high quality; that it contained ingredients with naturally whitening power and detoxifying properties; that it was natural, safe, non-abrasive and gentle; and that its natural ingredients and safety were certified. Plaintiff did not purchase the Cali White Activated Charcoal Teeth Whitening Powder, but she has standing to assert claims thereon because the product is substantially similar to the Cali White

product she did purchase and because Cali White's alleged misrepresentations, acts, omissions, and conduct as to the Cali White Charcoal Dentifrices are substantially similar.

19.     Defendant Crew International, LLC (aka Cali White herein) is a citizen of the state of Florida. It is registered in the state of Florida and has its principal place of business at 305 Park Avenue, Satellite Beach, Florida 32937. Defendant is an oral care product company engaged in the business of selling teeth whitening products and related products to consumers from its website, www.caliwhite.com, and through Amazon and other online stores of third-party retailers. It conducts mass marketing campaigns and distributes its Cali White Charcoal Dentifrices throughout the United States.

### III.     JURISDICTION AND VENUE

20.     This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5 million, exclusive of interest and costs; it is a Class Action of over 100 members; and Plaintiff is a citizen of a state different from Defendant.

21.     This Court has personal jurisdiction over Defendant, as many of the acts and omissions giving rise to this action occurred in the state of Oklahoma, including purchases of the Cali White Charcoal Dentifrices by the Plaintiff and members of the putative Classes. Defendant has sufficient minimum contacts with the state of Oklahoma and intentionally availed itself, and continues to avail itself, of the jurisdiction of this Court through its business ventures; specifically, the promotion, sale, and distribution of its products (including the Charcoal Dentifrices) in this state through print and online advertising and marketing targeted at Oklahoma residents.

22.     Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendant

does business throughout this district (including promoting, selling, marketing, and distributing the Charcoal Dentifrices at issue), and the Plaintiff made her online purchases of the Cali White Charcoal Dentifrice in this district.

## IV. FACTUAL ALLEGATIONS

### A. Background

23. Activated charcoal is made from coal, wood, coconut shells, sawdust, bamboo, or similar ingredients. The raw material is superheated, treated with different chemicals, and then superheated a second time with steam.[6]

24. Activated charcoal has adsorptive qualities that have proven to be quite useful in certain limited contexts. For decades, it has been used in the emergency medical treatment of certain types of poisonings and drug overdoses, because, when administered correctly, it can adsorb certain heavy metals, drugs and other toxins.[7] The effectiveness of medicinal activated charcoal in the emergency room setting is limited and dependent on specific factors, such as the type of drug or toxin, timing between ingestion of the toxin and ingestion of the medicinal charcoal, and dosage of each.[8]

25. Activated charcoal has also been used in industrial and environmental settings to extract certain organic and inorganic substances from water.[9] For example, it is sometimes used

---

[6]"Activated Charcoal FAQ," General Carbon Corp. [http://generalcarbon.com/facts-about-activated-carbon/activated-carbon-faq/] (last accessed June 26, 2019) (General Carbon Corp. is an activated charcoal manufacturer).
[7]*See generally*, Robert W. Derlet & Timothy E. Albertson, "Activated Charcoal—Past, Present and Future," 145 *West J. Med.* 493 (Oct. 1986) [https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1306980/pdf/westjmed00158-0063.pdf].
[8]*Id.*; *see also* Derlet & Alberston, *supra* note 3, at 493–92 & Table 1; Jennifer A. Lowry, "Use of Activated Charcoal in Pediatric Populations," World Health Organization: Subcommittee of Expert Committee on the Selection and Use of Essential Medicines, Jan. 2008, at 2, [https://www.who.int/selection_medicines/committees/subcommittee/2/charcoal_rev.pdf ] (reviewing literature on medical use of activated charcoal).
[9]*See generally* "The History of Activated Carbon," Jurassic Activated Carbon, Feb. 9, 2014 [https://www.jurassiccarbon.com/blogs/news/12186281-the-history-of-activated-carbon].

to remove excess amounts of fluoride from drinking water.[10] It is used in juice manufacturing to control color and remove organic compounds.[11] Activated charcoal can also adsorb water-soluble vitamins, including forms of Vitamins C and B.[12]

26.     Inspired by these longstanding (but limited and particular) uses of activated charcoal, enterprising companies like Defendant have been eager to extrapolate charcoal's adsorptive properties for use in a much broader context, often with little to no substantiation. Products containing activated charcoal are increasingly prevalent, and promoted with vague claims of 'detoxifying' properties as well false or overstated health and beauty benefits. Essentially, activated charcoal has been marketed to the public as capable of extracting nearly any undesirable element or substance, and in nearly any context.

27.     Simultaneous with the charcoal trend, consumer demand for teeth-whitening products has risen. The global market for teeth-whitening products is expected to reach $7.4 billion by 2024.[13] Dentists, dental scientists, and researchers have raised concerns about the rapid growth of dental health 'fads,' including the use of charcoal dentifrice, which, even when "there is a lack of . . . scientifically supported information around such items, [] this does not stop them from being used."[14] As Dr. Ada Cooper, a spokesperson for the American Dental Association, recently stated: "**Just because something is popular doesn't mean it's safe**."[15]

---

[10] Manisha Poudyal & Sandhya Babel, "Removal of Fluoride using Granular Activated Carbon and Domestic Sewage Sludge," 82 *Int'l Proceedings of Chem., Biological, and Envtl. Eng'g* 139 (2015) [http://www.ipcbee.com/vol82/027-IEEA2015-C3024.pdf]; *see also* Behrooz Eftekhar et al., "The Effectiveness of Home Water Purification Systems on the Amount of Fluoride in Drinking Water," *J. of Dentistry, Shiraz U. of Med. Sci.*, Sept. 2015, at 278, (noting that use of home water purification systems, including several using carbon-based filtration methods, reduced the amount of fluoride in water).

[11] Cetin Kadakal et al., "Research Note: Effect of Activated Charcoal on Water-Soluble Vitamin Content of Apple Juice," 27 *J. of Food Quality* 171 (Apr. 2004) [https://doi.org/10.1111/j.1745-4557.2004.tb00647.x].

[12] *Id.*

[13] https://www.hexaresearch.com/research-report/teeth-whitening-products-market.

[14] Marco Antonio Dias da Silva & Anthony Damien Walmsey, "Fake News and Dental Education," 226 *British Dental Journal* 397, 397-99 (2019).

[15] "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/]. (emphasis added).

28.     Cali White has successfully leveraged the charcoal trend and consumer enthusiasm for teeth whitening with its development, marketing, and sales of its Charcoal Dentifrices.

### B.     Contemporary Scientific Studies Challenge the Safety and Efficacy of Activated Charcoal for Use in Dentifrice

29.     The first use of charcoal for oral hygiene dates back to Hippocrates in ancient Greece.[16] The Romans apparently followed this practice, along with other questionable oral care practices such as rinsing their mouths with urine.[17]

30.      In the United States, there have been several attempts to introduce charcoal as an oral health product. According to commentary published in the Journal of the American Dental Association ("JADA") in 1932, a product named "Kramer's Original Charcoal Dental Cream," had been pronounced "not acceptable" as an Accepted Dental Remedies (ADR) by the Council on Dental Therapeutics (the "Council"). The Council found that "[c]linical experiences are recorded in which the particles of charcoal became imbedded in the gum tissue and produced a bluish line near the margin, which is removable only by surgical means."[18] When the Kramer's brand produced no evidence to rebut the clinical results, the Council denied it as an ADR "because it is a dentifrice intended for daily use that contains charcoal, a potentially harmful substance."[19]

31.     Decades after American dentistry rejected charcoal for use in dentifrice, the topic has again resurfaced, in light of the burgeoning consumer trend. In 2017, JADA published a literature review to "examine the efficacy and safety of charcoal and charcoal-based dentifrices."

---

[16] *See* S.W.B. Newsom, "Hygiene and the Ancient Romans," *J. of Infection Prevention*, at 25, June 2004 [https://journals.sagepub.com/doi/abs/10.1177/14690446040050030601].

[17] C. Valerius Catullus, "On Egnatius of the White Teeth," circa B.C. 84–54, (Tr. Richard Francis Burton, 1894), [http://www.perseus.tufts.edu/hopper/text?doc=Perseus:text:1999.02.0005:poem%3D39] (poem by the Roman poet Catullus referring to the practice of whitening teeth by rinsing with urine).

[18] John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148 JADA 785 (2017), [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)).

[19] *Id.*

John K. Brooks et al., *Charcoal and Charcoal-Based Dentifrices*, 148 JADA 661 (2017) (hereinafter "*Charcoal-Based Dentifrices* (JADA 2017)"). The authors, Dr. John Brooks, DDS, Dr. Nasir Bashirelahi, PhD, and Dr. Mark A. Reynolds, DDS, PhD, reviewed the first 50 consecutive charcoal dentifrices from Google.com and Amazon.com to assess how the marketing claims of these products compared with efficacy and safety of charcoal-based dentifrices as found in the available scientific literature.[20]

32.    The authors of *Charcoal-Based Dentifrices* (JADA 2017) reviewed advertising claims about the charcoal-based dentifrices on the market, and found: "Nearly one-half of the charcoal-based dentifrices were advertised as being capable of detoxification, with most claiming to detoxify the oral cavity or teeth. **Our review failed to identify scientific support in the literature that topical application of charcoal can provide any detoxification benefits to the teeth or oral mucosa.**"[21]

33.    The authors additionally reported that "**[c]harcoal has been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concern about damage to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel**."[22]

34.    In conclusion, the authors of *Charcoal-Based Dentifrices* (JADA 2017) stated:

In our literature review, **we found insufficient scientific evidence to substantiate the cosmetic, health benefits** (antibacterial, antifungal, or antiviral; **reduced caries; tooth whitening; oral detoxification**), **or safety claims** of marketed charcoal-based dentifrices. Controlled clinical trials and laboratory investigations of charcoal-based dentifrices . . . are needed to determine product efficacy and safety.[23]

---

[20]John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[21]*Id.* (emphasis added). The authors were unable to identify any randomized, controlled clinical trials with a follow-up duration of 3 months or longer testing the safety or effectiveness of charcoal-based dentifrices. All of the available studies lacked adequate controls to measure clinical oral improvements with charcoal-based dentifrices.
[22]*Id.* (emphasis added).
[23]*Id.* (emphasis added).

35.    Other studies have found similar problems with the use of activated charcoal in toothpastes and toothpowders. One study presented at the Academy of General Dentistry 2015 Annual Meeting, concluded that "activated charcoal was **more abrasive** than a whitening toothpaste on acrylic resins" and warned that "[t]he fine black charcoal powder **may become embedded** in defects such as margins or cracks present on older dentition."[24]

36.    A May 2019 article in the British Dental Journal noted a "worrying approach" in the marketing of charcoal dentifrices that placed "a strong emphasis on benefits which appeal to consumers, which have yet to be disproved," and lamented "[t]his 'scientifically claimed until proved wrong' approach is favoured over substantiated, evidence-based promotion."[25] Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 BDJ 697, 698 (2019) (hereinafter referred to as "*Charcoal-Containing Dentifrices* (BDJ 2019)"). The authors opined that "**the ethics of such an approach to the marketing of health-influencing products is at best questionable**. False and deceptive messaging, together with the selective provision of information could be classed as misleading practice, contrary to the consumers' best interests and protection."[26]

37.    *Charcoal-Containing Dentifrices* (BDJ 2019) notably concluded that charcoal-based dentifrices "may be considered to be **a fashionable, marketing 'gimmick'**" that is "based on folklore on the use of different forms of charcoal for oral and dental remedies," or improperly based on "present day uses of charcoal for medical purposes."[27]

---

[24]Brantley McCarty et al., "Activated Charcoal as a Whitening Dentifrice," Presented at Academy of General Dentistry 2015 Annual Meeting, June 18–21, 2015, San Francisco, CA [https://www.epostersonline.com/agd2015/node/72] (last accessed June 5, 2019). (emphasis added).
[25]Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, 698 (2019).
[26] *Id.* (emphasis added).
[27] *Id.* (emphasis added).

C.   **The American Dental Association has Not Approved any Activated Charcoal Dentifrice for its ADA Seal of Acceptance**

38.   The American Dental Association ("ADA") was founded in 1859.[28] Per the ADA's description of its mission, the ADA "exists to power the profession of dentistry and to assist our members in advancing the overall oral health of their patients."[29] ADA presents itself as a "strong advocate[] for public health" working with an aim to keep patients "healthy from the dental chair to daily care at home."[30]

39.   In furtherance of the ADA's public health goals, the organization administers the ADA Seal of Acceptance Program ("Seal Program"), which began in 1931.[31] The ADA began the Seal Program to combat "extravagant claims" about what dental products could do.[32] Since that time, the ADA Seal of Acceptance has become "[u]niversally recognized by consumers as a symbol of safety and effectiveness" and "is carried on more than 300 oral health products, including toothpastes, toothbrushes, dental floss, mouth rinses, denture adherents, and chewing gum."[33] Companies can submit dental products to the Seal Program by including "data from clinical or laboratory studies that demonstrate safety and efficacy according to product category requirements developed by the ADA Council on Scientific Affairs."[34] Members of the ADA Council review submissions for adherence to product category requirements and, if necessary,

---

[28] https://www.ada.org/en/about-the-ada/ada-history-and-presidents-of-the-ada (last accessed November 18, 2019).
[29] https://www.ada.org/en/about-the-ada (last accessed November 18, 2019).
[30] *Id.*
[31] https://www.ada.org/en/science-research/ada-seal-of-acceptance (last accessed November 18, 2019).
[32] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq, "What is the ADA Seal?" (last accessed November 18, 2019).
[33] https://www.ada.org/en/about-the-ada (last accessed November 18, 2019).
[34] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq, "What determines if a dental product qualifies for the Seal?" (last accessed November 18, 2019).

utilize consultants with relevant specific area expertise.[35] Once a product's safety and efficacy has been demonstrated, the ADA Council will award the Seal Acceptance.[36]

40.    A variety of major brands have sought and received the ADA Seal of Acceptance for certain products, including, but not limited to, Crest, Efferdent, ACT, CVS, Equate (Walmart), Listerine, Up and Up (Target), Oral-B, and Colgate.[37] Significantly, the ADA has not granted the ADA Seal of Acceptance to any product with activated charcoal.[38]

41.    Defendant has not received the ADA Seal of Acceptance for the products named herein.[39] Based upon the prevailing scientific literature regarding the lack of safety and efficacy of activated charcoal in dental products, Defendant would have been aware of the unsuitability of the ADA Seal of Acceptance for its Charcoal Dentifrices. Nevertheless it has chosen to make the exact sort of false, deceptive, and/or misleading extravagant claims that inspired the creation of the ADA's Seal Program. And, as described more fully herein, it has even falsely and misleadingly stated that the FDA has approved Cali White.

**D.    Cali White's Representations on the Charcoal Dentifrices' Labeling, Packaging, Advertising, and Marketing**

42.    Since at least 2017, Defendant has packaged, marketed, distributed, and sold some or all of its Cali White Charcoal Dentifrices. Examples of the external cardboard boxes, product packaging and labels contained therein include:

---

[35] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-faq, "How are products evaluated?" (last accessed November 18, 2019).
[36] *Id.*
[37] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-shopping-list (last accessed November 18, 2019).
[38] *See* https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-shopping-list (last accessed November 18, 2019).
[39] https://www.ada.org/en/science-research/ada-seal-of-acceptance/ada-seal-shopping-list (last accessed November 18, 2019).



- "No Fluoride"

- **"Oral Detox"**

- "3 Simple Steps"



- "**Nature's Whitening Toothpaste**"

- "**Nature's Answer to Teeth Whitening**"

- "We teamed up with **Mother Nature** to deliver a toothpaste with **the most effective whitening and detoxifying ingredients on earth.**"

- "Make sure to share your **healthier whiter smile** with everyone."

- "Apply **generous amount** on damp tooth brush bristles. There are no foaming agents so toothpaste may dissolve a little while brushing, this is totally normal. Brush thoroughly for two minutes. Clean off toothbrush bristles and rinse mouth. Then brush tongue with clean bristles and don't forget to floss."



- "**Teeth Whitening**"

- "**Oral Detox**"

- "Freshens Breath"

- "No Fluoride / SLS Free / No Triclosan / No Peroxide"

43.    The CaliWhite.com website includes the following representations:

## WE ARE

We are adding a bunch more info very shortly so you can know us better.

We founded Cali White to remove the chemicals from whitening products. [40]

## NATURE'S ANSWER TO TEETH WHITENING

We teamed up with Mother Nature to deliver the **most powerful** and **natural teeth whitening** products in the game.

**WE KEEP IT REAL! VEGAN, CRUELTY FREE, GLUTEN FREE, NO NASTY CHEMICALS.** [41]



[42]

---

[40] https://caliwhite.com/pages/about-us (last accessed December 4, 2019).
[41] https://caliwhite.com/ (last accessed December 4, 2019).
[42] https://caliwhite.com/collections/charcoal-products/products/cali-white-activated-charcoal-teeth-whitening-powder-all-natural-tooth-whitener-bonus-binchotan-charcoal-bamboo-toothbrush (last accessed December 4, 2019).

## 2-8 SHADES WHITER NATURALLY

We teamed up with Mother Nature to deliver a powder with the most **effective whitening** and **detoxifying ingredients** on Earth

Food Grade Activated Charcoal, Baking Soda, Stevia, & Peppermint create powerful teeth **whitening effect with zero tooth sensitivity.**

Our Activated Charcoal is made from **Organic Coconut Shells**

We use **Ultra Fine Charcoal** to prevent any gum irritation.

**Includes:** 60g Jar + Bonus Binchotan Charcoal Toothbrush with Bamboo Handle

## YOU MIGHT GET *A LITTLE MESSY* IN THE PROCESS, BUT ISN'T ANYTHING GREAT IN LIFE, A LITTLE MESSY [43]



[44]

---

[43] https://caliwhite.com/collections/charcoal-products/products/cali-white-activated-charcoal-teeth-whitening-powder-all-natural-tooth-whitener-bonus-binchotan-charcoal-bamboo-toothbrush (last accessed December 4, 2019).
[44] https://caliwhite.com/collections/charcoal-products/products/cali-white-activated-charcoal-teeth-whitening-powder-all-natural-tooth-whitener-bonus-binchotan-charcoal-bamboo-toothbrush (last accessed December 4, 2019).



The above images from the Cali White website reflect various claims made by Cali White, including but not limited to:

- "We founded Cali White to remove the chemicals from whitening products."

- "We keep it real! Vegan, cruelty free, gluten free, no nasty chemicals."

- "**Nature's Answer to Teeth Whitening**"

- "We teamed up with Mother Nature to deliver the **most powerful and natural teeth whitening** products in the game."

- "We teamed up with Mother Nature to deliver a powder with **the most effective whitening and detoxifying ingredients on Earth**"

- "**2-8 Shades Whiter Naturally**"

- "Food Grade Activated Charcoal, Baking Soda, Stevia, & Peppermint create **powerful teeth whitening effect with zero tooth sensitivity**."

- "We use Ultra Fine Charcoal to **prevent any gum irritation**."

- "**Zero Sensitivity**"

- "**Dentist Recommended**"

- "**Clinically Proven**"

---

[45] https://caliwhite.com/collections/charcoal-products/products/cali-white-activated-charcoal-teeth-whitening-powder-all-natural-tooth-whitener-bonus-binchotan-charcoal-bamboo-toothbrush (last accessed December 4, 2019).

- "**Oral Detox**"

- "Anti-Bacterial"

44.     Cali White makes the same and similar claims elsewhere online regarding its Cali

White Charcoal Dentifrices, including Amazon.com:

- 🔵 😊 "NATURE'S ANSWER TO TEETH WHITENING" We teamed up with Mother Nature to deliver a powder with the most effective whitening and detoxifying ingredients on earth. Food Grade Activated Charcoal from Organic Coconuts, Baking Soda, Stevia, & Peppermint create a powerful teeth whitening effect with zero taste sensitivity. 3 Month Supply - 20g Jar.
- us MADE IN USA - VEGAN - NO SLS - CRUELTY FREE - NO GMO - PEROXIDE FREE - FLUORIDE FREE - 100% NATURAL with no harsh chemicals. Extra Fine Powder Formula (5-10 microns) to prevent any abrasiveness to gums.
- 😊 REAL RESULTS AND BEST TASTING CHARCOAL POWDER. Whiten up to 8 Shades while enjoying our amazing Pacific Mint Flavor.
- 😊 FULL SMILE SATISFACTION GUARANTEE - We are sure you will love your new smile but if for any reason you are not happy please contact our Smile Team to make use of our guarantee.
- (Bamboo Toothbrush NOT INCLUDED) [46]

**Product description**

**Find Your Smile**

*"Nature's Answer to Teeth Whitening"*

Removes stains from **coffee, wine, tea, and smoking**. Professional Results in as fast as 1 treatment. Experience a 2-8 Shade Whiter Smile in 7 days with our enamel safe Activated Charcoal Powder.

**Whats Included**

- 20gram Jar of Cali White Charcoal Teeth Whitening Powder

MADE IN THE USA - Our products are filled in a FDA certified facility in the USA. *Be wary* - some popular sellers of whitening powders on Amazon are using low quality powder from China

WE ARE A REAL ESTABLISHED COMPANY IN CALIFORNIA - Founded in 2011, we are now the fastest growing teeth whitening company in the USA and UK for 2017.

*ADD TO CART TODAY* - We are having a really hard time keeping this product in stock. The demand has been insane.

FULL SMILE REFUND POLICY - If you are not 100% satisfied with your product, you will receive a full refund immediately. We do encourage you to contact our Smile Team to receive another one of our amazing teeth whitening products to get your desired results. [47]

---

[46] https://www.amazon.com/Cali-White-Activated-Toothpaste-Toothbrush/dp/B0732WN74N (last accessed December 4, 2019).
[47] https://www.amazon.com/Cali-White-Activated-Toothpaste-Toothbrush/dp/B0732WN74N (last accessed December 4, 2019).



48



49

---

48 https://www.amazon.com/Cali-White-ACTIVATED-WHITENING-TOOTHPASTE/dp/B06WRS71N8 (last accessed December 4, 2019).
49 https://www.amazon.com/Cali-White-ACTIVATED-WHITENING-TOOTHPASTE/dp/B06WRS71N8 (last accessed December 4, 2019).

**Product description**

"NATURE'S ANSWER TO TEETH WHITENING"

We teamed up with Mother Nature to deliver a toothpaste with the most effective whitening and detoxifying ingredients on earth. Activated Charcoal, Certified Organic Coconut Oil, and Baking Soda create a powerful teeth whitening effect with zero tooth sensitivity.

You Want - An all natural, effective, and easy way to whiten your teeth without all the nasty chemicals used in most large retail toothpastes.

You Need - Your daily Oral Detox to promote gum health, and keep your breath as fresh as the ocean breeze.

You Get - The best natural whitening toothpaste on planet Earth.

MADE IN THE USA - Our products are filled in a FDA certified facility in the USA.  Teeth Whitening using toothpaste is a more gradual process than other options. Please allow two weeks to see results. [50]

The above images from the Amazon website reflect the same and similar claims previously pointed out, as well as various other claims by Cali White, including but not limited to:

- "**Powerful teeth whitening effect** with **zero tooth sensitivity**"

- "100% NATURAL with no harsh chemicals."

- "Extra Fine Powder Formula (5-10 microns) to **prevent any abrasiveness to gums**."

- "Experience a **2-8 Shade Whiter Smile in 7 days** with our **enamel safe Activated Charcoal Powder**."

- "We teamed up with Mother Nature to deliver a toothpaste with the **most effective whitening and detoxifying ingredients on earth**. Activated Charcoal, Certified Organic Coconut Oil, and Baking Soda **create a powerful teeth whitening with zero tooth sensitivity**."

- "You Want – An **all natural, effective, and easy** way to **whiten your teeth without all the nasty chemicals used in most large retail toothpastes**."

- "You Need – **Your daily Oral Detox to promote gum health**, and keep your breath as fresh as the ocean breeze."

- "You Get – **The best natural whitening toothpaste on planet Earth**."

- "We are a **real established company in California** – Founded in 2011, we are now the fastest growing teeth whitening company in the USA and UK for 2017."

- "**California Craft Toothpaste** – Est. 2017, **Santa Barbara, CA**"

---

[50] https://www.amazon.com/Cali-White-ACTIVATED-WHITENING-TOOTHPASTE/dp/B06WRS71N8 (last accessed December 4, 2019).

24

- "**Made in California**"

- "**100% Enamel Safe**"

- "**Dentist Recommended**"

- "With an RDA (Relative Dentin Abrasivity) of 114, **Cali White is determined safe for lifetime use by the FDA**. Our Charcoal toothpaste is **less abrasive than Crest** Whitening Toothpaste."

- "FDA Registered Facility"

**E.    Cali White's Marketing Claims are Debunked or Unsubstantiated by Scientific Evidence, Misleading and/or Untrue**

**(i)    *"Detoxifying"***

45.    As previously described, Cali White markets its Charcoal Dentifrices as a natural and powerful (and even "radical") detoxifier. "ORAL DETOX" is printed ubiquitously on the product packaging for the toothpaste and the toothpowder. Defendant touts both products as containing the "most … detoxifying ingredients on earth," and consistently represents purported detox and detoxifying properties. See Section D, above.

46.    In reality, Cali White's claims are specious and make misuse of the term "detoxification." Detoxification is a *medical term* that refers to emergency treatments for dangerous levels of drugs, alcohol, or poisons, like heavy metals.[51] It is in this very specific context – an emergency medical detoxification – that activated charcoal has been used successfully. Yet, writes Scott Gavura in *Activated Charcoal, The Wellness Scam* (Science Based Medicine, Aug. 8, 2019): "what's popularly called a 'detox' today has nothing to do with actual medical detoxification," and "[f]ake detox, the kind you find in magazines, and sold in pharmacies, juice

---

[51] Scott Gavura, "Activated Charcoal, The Wellness Scam," *Science Based Medicine*, Aug. 8, 2019 [https://sciencebasedmedicine.org/activated-charcoal-the-wellness-scam/ ].

bars, and health food stores, is make-believe medicine. The use of the term 'toxin' in this context is meaningless…. but **it sounds just scientific enough to be plausible**."[52] Mr. Gavura goes on, "if you hear the words 'detox' uttered anywhere but an emergency room, keep in mind that you're hearing a marketing pitch, not credible health evidence."[53] "Despite the marketing hype, activated charcoal has no ability to suck out the toxic chemicals from the rest of your body."[54]

47.    Multiple scientific and popular consumer publications have made note of this logical fallacy and have debunked the broadly asserted 'detoxifying' properties of activated charcoal (particularly in its most commonly available form as an ingestible supplement). In April 2017, Consumer Reports published *Activated Charcoal Isn't a Magic Health Bullet,* wherein Julia Calderone writes: "In recent years, people have tried to translate the very limited success of activated charcoal in the ER to their everyday lives, assuming that if it can adhere to and remove certain drugs in an emergency room, it can stop all kinds of toxins, making an already healthy person even healthier."[55] Lisa Sasson, M.S., R.D., clinical associate professor of nutrition at New York University is quoted as saying "**this logical leap is not based in science**."[56]

48.    In another example from 2017, the Superfoodly.com website published *Activated Charcoal Uses May Be Harmful, Possibly Cancerous?* stating: "The problem is that none of these cleansing/detox benefits are backed by science…. using [charcoal] to remove toxins from your body is **nonsensical**, unless you literally just ingested poison (and even then, it will absorb only

---

[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] Julia Calderone, "Activated Charcoal Isn't a Magic Health Bullet," Consumer Reports (April 13, 2017) [https://consumerreports.org/dietary-supplements/activated-charcoal-fad-not-a-magic-health-bullet/].
[56] *Id.*

certain types). There are no clinical trials or peer reviewed research which suggests activated charcoal removes toxins daily when used as a supplement."[57]

49.     Even more implausible than the 'detoxifying' effects of ingestible supplements (largely debunked), are purported 'detoxifying' properties in topically applied personal care products (such as dentifrice). The logic of employing charcoal in this context is much more attenuated and is, in fact, *wholly unsupported*.

> "**At the root of the activated charcoal health fad is the misuse, or misunderstanding, of the word 'toxin.'** In a detox-crazy world, toxins are used to refer to impurities or anything undesirable in your body: **stains on your teeth**, dirt or dust on your skin, naturally present sugars in your juice, a hangover after a night out. **Personal care products** (**like teeth whiteners**, face masks, soaps, shampoos, and deodorants) containing activated charcoal **bank on the idea that impurities can be draw out during use**. . . But **there is little to no research to prove that the trace amounts of activated charcoal, combined with other ingredients, in these products are effective and much more than just marketing**."[58]

50.     Indeed, as previously discussed, the findings published in *Charcoal-Based Dentifrices* (JADA 2017) reflected the researchers' inability to identify scientific support "**that topical application of charcoal can provide any detoxification benefits to the teeth or oral mucosa**."[59] This included "antibacterial, antifungal, or antiviral" benefits, as well as reduced caries or a more general (and ill-defined) notion of "oral detoxification."[60]

**(ii)**     ***"Naturally Whitening"***

51.     Cali White's whitening claims for the Charcoal Dentifrices (made on its product packaging, labeling, marketing and advertising) include but are not limited to: "Nature's Answer to Teeth Whitening," "Radical Whitening," "powerful whitening effect," "most powerful and

---

[57] "Activated Charcoal Uses May Be Harmful, Possibly Cancerous?," Superfoodly (July 28, 2017) [https://www.superfoodly.com/activated-charcoal-uses-side-effects/].

[58] Katie Mui, "Activated Charcoal: The Powerful Detox Ingredient You Don't Want in Your Regular Diet," GoodRx, Feb. 7, 2019 [https://www.goodrx.com/blog/what-is-activated-charcoal-detox-medication-interactions/]. (emphasis added).

[59] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).

[60] *Id*.

natural teeth whitening products in the game." Cali White's online marketing for the toothpowder even promises "2-8 Shade Whiter Smile in 7 days." See Section D above.

52.    When a toothpaste or toothpowder is advertised as "whitening," most reasonable consumers believe it will leave their teeth whiter. However, dentists and researchers have warned that charcoal dentifrice companies' "whitening" claims are misleading, due to the failure to clarify the distinction between intrinsic and extrinsic whitening mechanisms. As opposed to intrinsic whiteners, the British Dental Journal explains, many "products whiten teeth, to different extents, by the removal of surface (extrinsic) stains, which may reform relatively quickly in, for example, a smoker. Typically, these products do not change the intrinsic colour of the tooth, which is largely determined by the colour of the dentine."[61]

53.    Linda Greenwell, in her 2017 article *Charcoal Toothpastes: What We Know So Far*, concluded: "[t]here is no evidence that the use of charcoal toothpaste has an effect on intrinsic (internal) staining of teeth or on intrinsic whitening of the teeth."[62] In 2019 Ms. Greenwell, as co-author *Charcoal-Containing Dentifrices* (BDJ 2019), re-affirmed the conclusion that activated charcoal "does not change the colour of the teeth other than by abrasive action similar to that of a 'smoker's toothpaste'. . . ."[63] "The common interchangeable use and misuse of the terms 'whitening' and 'bleaching' is therefore misleading and confusing to consumers and patients, with the marketing of some charcoal and other dentifrices being no exception."[64]

---

[61] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental J.* 697, 699 (2019).
[62] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017) [https://www.pharmaceutical-journal.com/opinion/correspondence/charcoal-toothpastes-what-we-know-so-far/20203167.article?firstPass=false].
[63] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental J.* 697, 699 (2019).
[64] *Id.*

54.     The Cali White Charcoal Dentifrices do not intrinsically whiten teeth. As such, any claimed "whitening" properties of the Cali White Charcoal Dentifrices are limited to the removal of extrinsic surface stains, and therefore misleading.[65]

55.     Cali White's "whitening" claims are deceptive for the additional reason that it presents the Charcoal Dentifrices as possessive of "naturally" whitening qualities due to the unique attributes of activated charcoal. Charcoal works as an abrasive whitening agent to achieve the mechanical removal of extrinsic stains, as its composition and fractal-shaped particles make it highly abrasive to tooth enamel.[66] As such, extrinsic stain-lifting that could be viewed as 'whitening' is *not achieved from adsorptive qualities of the charcoal*; rather it is achieved by the *particularly abrasive effects of the charcoal*.

56.     Put another way, the Cali White Dentifrices "work" to "whiten" teeth by having the charcoal particles scrape off the surface of the teeth, i.e. the tooth enamel. The adsorptive qualities of charcoal are irrelevant in the context of purported teeth whitening, and Cali White's representations in this regard are misleading and deceptive, similarly to its frivolous "detoxifying" claims.

57.     Moreover, long-term use of the Cali White Charcoal Dentifrices could potentially result in a darkened and yellow tooth appearance. This is because, when teeth are regularly brushed with highly abrasive substances such as charcoal, the enamel can wear down and cause the tooth's dull, internal dentin to show through.[67] As Dr. Ada Cooper, spokesperson for the American Dental Association, has explained: "Using materials that are too abrasive can actually make your teeth

---

[65] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).

[66] *See, e.g.,* Matthias Epple et al., "A Critical Review of Modern Concepts for Teeth Whitening," 79 *Dentistry J.*, 7 (Aug. 1, 2019) [https://www.mdpi.com/2304-6767/7/3/79/htm].

[67] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017) ("Charcoal has long been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concerns about damage to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel.").

look more yellow, because it can wear away the tooth's enamel and expose the softer, yellower layer called dentin."[68]

**(iii)**     *Safety for daily, long-term oral care use*

58.     The Cali White Charcoal Dentifrices are represented as "100% Enamel Safe," that they "promote gum health," "prevent any abrasiveness to gums," and cause "zero teeth sensitivity." See Section D, above.

59.     Cali White conveys a message that one or both of the Charcoal Dentifrices are appropriate as a consumer's primary, long-term and everyday source of oral hygiene. Printed on the toothpaste packaging are instructions for use that approximate a regular brushing routine, suggesting that the claimed benefits come from brushing normally. Section D. The powder is also marketed as adequate for stand-alone oral care use: "your daily oral detox to promote gum health, and keep your breath as fresh as the ocean breeze" (instructions for use of the powder do suggest that a toothpaste can "also" be added "on top"). Sec. D.

60.     The products are presented as "dentist recommended," "clinically proven," and bringing "professional results." Sec. D. Cali White also claims that "with an RDA (Relative Dentin Abrasivity" of 114, Cali White is determined safe for lifetime use by the FDA." Sec. D.

61.     First, Cali White's representations on FDA regulatory approval are false. The FDA has not assessed the safety of Cali White Charcoal Dentifrices nor approved it for life-time use. More detailed allegations on why this claim is wrong, as well as intentionally misleading and deceptive are in Section G, below.

62.     Cali White fails to disclose the fact that activated charcoal has not been substantiated as safe and effective for use in dentifrice. Activated charcoal is known to be a highly

---

[68] "Beware Whitening Promise of Charcoal Toothpastes," The Family Dental Center, Mar. 2019, [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/].

abrasive and harmful substance to tooth enamel.[69] Multiple scientific studies have noted its abrasiveness presents a risk to enamel and gingiva in the context of oral care products. As noted in JADA in 2017: "[c]harcoal has been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concern about damages to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel."[70] *Charcoal-Containing Dentifrices* (BDJ 2019) re-affirmed that, because the 'whitening' effects activated charcoal was achieved "by abrasive action," "its use may pose some risk to the enamel and gingiva."[71]

63.    Moreover, the abrasive damage to tooth enamel caused by charcoal can set the stage for spiraling into additional oral health issues. It has been shown that increased surface roughness of teeth creates an environment conducive to increased bacteria in the oral cavity. This, in turn, can lead to other problems and is correlated with high caries and periodontal disease.

64.    The findings of a controlled scientific study, published in a 2017 article *Surface Changes of Enamel After Brushing with Charcoal Toothpaste*, confirmed that charcoal-based toothpastes are more abrasive and affecting on the surface roughness on a tooth as compared to other non-charcoal whitening toothpastes.[72] The study acknowledged that all effective toothpastes must be abrasive to some degree, and ideal toothpastes are those "with the ability to maximally clean teeth with a minimal degree of abrasiveness. . . ."[73] Charcoal's abrasiveness is related to its composition and irregular particle shape, which is "star shaped" or "fractal shaped."[74] However,

---

[69] *See, e.g.*, John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 785 (2017) [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)) (Concluding a charcoal dental cream was not an acceptable dental remedy "because it is a dentifrice intended for daily use that contains charcoal, a potentially harmful substance").
[70] John K. Brooks et al., "Charcoal and Charcoal-Based Dentifrices," 148 *JADA* 661 (2017).
[71] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, (2019).
[72] U I Pertiwi et al., *Surface Changes of Enamel After Brushing with Charcoal Toothpaste*, IOP Conf. Series: Journal of Physics: IOP Conf. Series 884 (2017) [iopscience.iop.org] (doi:10.1088/1742-6596/884/1/012002).
[73] *Id*.
[74] *Id*.

the "research concluded that there were increasing surface roughness values of tooth surfaces after the use of toothpaste containing charcoal, and the increased surface roughness was statistically significant . . . ."[75] Increased surface roughness on a tooth's enamel is "a strategic place for bacteria to adhere to the tooth's surface," and "[t]he presence of bacteria in the oral cavity is one of the causes of high caries and periodontal disease risk."[76]

65.    Still more problematic, experts have noted that certain characteristics of charcoal dentifrices tend to prolong users' brushing time and increase brushing vigorousness, which can serve to *further exacerbate the abrasive effect* of charcoal dentifrices. The first such characteristic is the distinct black color of pastes containing charcoal. "Charcoal-containing toothpastes are black in colour and brushing off the colour tends to prolong brushing, or the use of excessive brushing force, which may lead to the abrasion of teeth."[77] The same phenomena occurs with dentifrices claimed to have 'whitening' properties, as consumers might brush more frequently and vigorously to achieve the desired whitening more quickly, not realizing that "excessive brushing with a charcoal-based dentifrice may cause more harm than good."[78]

66.    Studies also show bad aesthetic effects in some users. "Particles of charcoal included in charcoal toothpaste may accumulate in crevices and other defects in teeth, including cracks in the teeth of older individuals."[79] For "patients with established periodontal disease," the use of charcoal-based dentifrices may result in "the accumulation of charcoal particles deep in periodontal defects and pockets, causing grey/black discoloration of the periodontal tissues."[80]

---

[75] *Id.*

[76] *Id.*

[77] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).

[78] Linda H. Greenwall et al., "Charcoal-Containing Dentifrices," 226 *British Dental Journal* 697, (2019). (emphasis added).

[79] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).

[80] Linda H. Greenwall et al., *Charcoal-Containing Dentifrices*, 226 British Dental Journal 697, (2019).

67.     Studies have also shown that the staining and discoloration caused by charcoal dentifrices can impact dental implants. When grey lines are created by the buildup of charcoal particles between dental restorations and teeth, it can ultimately "necessitate the costly replacement of the affected filings, veneers or crowns."[81]

68.     *Charcoal-Based Dentifrices* (JADA 2017) recommended that dental practitioners warn their patients about this issue and the use of charcoal toothpastes. Dentists, the authors wrote, should "educate their patients about the unproven claims of oral benefits and possible health risks associated with the use of charcoal dentifrices and the potential increased risk of developing caries with the use of these nonfluoridated . . . products."[82]

69.     The safety of the Cali White Charcoal Dentifrices for daily, long-term use is thus under serious doubt, and not just for particular consumers (such as the elderly or those with periodontal disease or dental implants). The scientific journals raise concerns as to typical consumers of average age and oral health as well.

**F.     Cali White Knew or Should Have Known its Material Claims and Omissions on Whitening and Detoxifying Properties and Safety were Misleading, Deceptive and/or False**

70.     Cali White's legal duties include (i) to ensure the safety of the Charcoal Dentifrices, (ii) to ensure the advertising claims and the label and packaging of the Charcoal Dentifrices are not misleading or deceptive, (iii) to substantiate its claims. These obligations were created and are governed by, *inter alia*, the Federal Trade Commission Act (15 U.S.C. § 41 *et seq*.) ("FTC Act"), as well as the Federal Food, Drug and Cosmetic Act (21 U.S.C. §321 *et seq*.) ("FD&C Act"), the Fair Packaging and Labeling Act (15 U.S.C. §1451 *et seq*.) ("FP&L Act") and the regulatory

---

[81] Linda Greenwall & Nairn H.F. Wilson, Opinion, "Charcoal Toothpastes: What We Know So Far," *Clinical Pharmacist* (July 13, 2017).
[82] *Id*. (emphasis added).

frameworks and rules created thereunder. Such laws were created in the aim to protect consumers from unfair and deceptive practices (including unsafe or deceptively labeled or packaged products), as well as to protect against unfair competition. As a company engaged in the interstate marketing, distribution and sale of its Charcoal Dentifrices (which meet the definition of a "cosmetic" as defined in the FTC and FD&C Acts), Cali White was or should have been aware of its legal duties under these laws, as well as the regulatory framework built thereunder.

71. Section 5 of the FTC Act broadly prohibits unfair and deceptive trade practices (15 U.S.C. § 45), and Section 12 of the FTC Act prohibits the dissemination of false and misleading advertisement of food, drugs, and cosmetics (15 U.S.C. §§ 52). The FTC requires advertisers possess a reasonable basis for their advertising and marketing claims, and to have substantiated all of its claims (express and implied) before it disseminates them. The requisite level of substantiation for claims concerning health and safety is higher, and sometimes termed "competent and reliable scientific evidence." Additionally, when an advertiser conveys to a consumer (expressly or impliedly) that it has certain level of support or evidence for its products, it must possess such substantiation *to the actual level it claims* to have it.

72. The FD&C Act prohibits the marketing and movement in interstate commerce of adulterated or misbranded food, drugs and cosmetics. 21 U.S.C. § 321 *et seq.* Under the FD&C Act, a cosmetic[83] is considered misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 263(a). Labeling will be deemed misleading not only because a label statement is deceptive in its representations, but also when a material fact is not revealed on a label. As to the latter, labeling will be deemed misleading if it fails to reveal facts that are material in light of other

---

[83] The Charcoal Dentifrices at issue qualify as cosmetics, as they are fluoride-free and are intended to be applied to the human body for cleansing, beautifying, promoting attractiveness, or altering the appearance.

representations, or material with respect to the consequences resulting from the intended use of the product. 21 CFR 1.21.

73.    A cosmetic is also considered misbranded if its safety has not been adequately substantiated, and it does not conspicuously bear the statement: "**Warning – The safety of this product has not been determined**." 21 CFR 740.10. The safety of a cosmetic may be considered adequately substantiated if experts qualified by scientific training and experience can reasonably conclude from the available toxicological and other test data, chemical composition, and other pertinent information that the product is not injurious to consumers, under conditions of customary use and reasonably foreseeable conditions of misuse.[84]

74.    Cali White was, or should have been aware of its obligations under the above-described legal and regulatory framework, yet appears to have disregarded its duties as to claim substantiation, safety, marketing and advertising, as well as product package and labeling.

75.    Scientific studies and journals that contradicted many of Cali White's claims were published and available to Cali White at the time it disseminated its claims. Moreover, Cali White would not have even had to look to academic or scientific resources, because the scientific findings were also reported in consumer reports and mainstream media outlets during the time the Cali White Charcoal Dentifrices were marketed and sold.  Many such reports also reflected the general concerns of dental professionals, and further serve to controvert that Cali White had any reasonable basis or substantiation for its claims, including that the products are "dentist recommended," "clinically proven," or endorsed and determined safe for long-term use by any regulatory or authoritative body.

- ABC News, June 2017, *How Safe is Activated Charcoal?* reports concerns of Dr. Upen Patel, D.D.S., because charcoal dentifrices are not evaluated by the ADA for long term use,

---

[84] FDA Cosmetic Labeling Guide, https://www.fda.gov/cosmetics/cosmetics-labeling-regulations/cosmetics-labeling-guide.

can erode enamel, abrasiveness, gums, and tissue, and the small charcoal particles "can get stuck in your gums and in small cracks in your teeth, so you can have these little black lines in your gums and your teeth you can't get out."[85]

- Prevention.com, September 2018, *Is Charcoal Toothpaste the Answer to Whiter Teeth?,* quoted Dr. Kenneth Magid, D.D.S., adjunct clinical associate professor at NYU College of Dentistry: "Not only do charcoal toothpastes not meet the criteria that I would use to recommend them, but they may be too abrasive and damaging to teeth." "Since charcoal toothpastes aren't regulated by any agency or approved by the ADA, many of the products may be too abrasive for regular use and can possibly remove the enamel outside of the teeth or damage porcelain restorations such as veneers or crowns." "Once the enamel wears away, there's no way to regrow it, and on top of that, it can actually make your teeth look duller and darker instead of brighter. This is due to the underlying dentin showing through. . . . In addition to darkening your smile, wearing down your enamel will also make your teeth more sensitive to temperature and prone to cavities."[86]

- BBC, May 2019, *Charcoal Toothpastes 'don't whiten teeth,'* cited the British Dental Journal for the premise that "charcoal-based toothpastes, which claim to whiten teeth, are a 'marketing gimmick' which could increase the risk of tooth decay," and are "more abrasive than regular toothpastes, potentially posing a risk to the enamel and gums." The article quoted Dr. Greenwall-Cohen as stating that charcoal particles in toothpastes can "get caught up in the gums and irritate them," and also be problematic for fillings.[87]

- Harper's Bazaar, August 2018, *Is Charcoal Toothpaste Safe to Use*? (re-published in July 2019), reported on the doubts and issues raised by the British Dental Journal, noting, "[u]nlike your liver and kidneys, the teeth and gums don't perform a detoxifying function of the body, and since so-called toxins aren't generally hanging out in your mouth anyway, there's not much point in using your tooth cleaning to purge them."[88]

- DailyMail, May 2019, *Charcoal-based Toothpastes do NOT whiten teeth and may lead to tooth decay as dentists warn the products are reliant on 'marketing gimmicks and folklor*e, quoties Professor Damien Walmsley, scientific adviser for the British Dental Association: "Charcoal-based toothpastes offer no silver bullets for anyone seeking a perfect smile, and come with real risks attached." "These abrasive formulations may be effective at removing

---

[85] Irene Cruz, "How Safe Is Activated Charcoal?," ABC 10 (June 9, 2017) [https://www.abc10.com/article/news/local/how-safe-is-activated-charcoal/447456019].
[86] Macaela Mackenzie, "Is Charcoal Toothpaste the Answer to Whiter Teeth?," Prevention (Sept. 26, 2018) [https://www.prevention.com/beauty/a23470865/charcoal-toothpaste/].
[87] "Charcoal Toothpastes 'don't whiten teeth,'" BBC: Health, May 10, 2019 [https://www.bbc.com/news/health-48216116].
[88] Lauren Hubbard & Alexandra Tunell, "Is Charcoal Toothpaste Safe to Use?," Harper's Bazaar, Aug. 14, 2018 (updated: Harper's Bazaar Staff, "Is Charcoal Toothpaste Safe to Use?," July 31, 2019) [https://www.harpersbazaar.com/beauty/health/advice/a3764/charcoal-toothpaste-pros-cons/].

surface stains, but prolonged use may also wear away tooth enamel. Research now shows it could even cause discoloration of the gums."[89]

- Dr. Ada Cooper, DDS, spokesperson for the American Dental Association, warned of charcoal toothpastes in *Beware Whitening Promise of Charcoal Toothpastes* in March 2019: "Just because something is popular doesn't mean it's safe." "Charcoal is recognized as an abrasive material to teeth and gums." "Using materials that are too abrasive can actually make your teeth look more yellow, because it can wear away the tooth's enamel and expose the softer, yellower layer called dentin."[90]

76.     It is implausible that Defendant, a major oral care company that possessed sophisticated marketing savvy and invested significant time, money and effort the marketing of its products, failed to notice medical, dental, scientific reports and media coverage on the risks associated with charcoal dentifrices. (Unlike consumers, whose attention to the claims of the oral care industry will likely be limited to time in a shopping aisle looking at product packaging, or at online retail sites that present a company's marketing claims).

77.     Moreover, in light of above sampling of statements from prominent dentists, as well as an ADA spokesperson, it is clear Cali White's claim the Charcoal Dentifrices are "dentist recommended" is false and inaccurate, and not substantiated with legitimate data, such as an objective survey of dentists' observations and experience in their dental practice.

78.     Red flags were also raised by Defendant's own customers. Verified Cali White Charcoal Dentifrices consumers have raised concerns online for years – citing problems that comport with those identified in dentistry studies and other reports. In a review dated December 20, 2017, Amazon user "Catina" reported the following after using the Cali White Activated Charcoal Teeth Whitening Powder: "Leaves a black outline around your gums and now my gums

---

[89] Victoria Allen, "Charcoal-based Toothpastes do NOT whiten teeth and may lead to tooth decay as dentists warn the products are reliant on 'marketing gimmicks and folklore," DailyMail (May 9, 2019), [https://www.dailymail.co.uk/health/article-7010219/Charcoal-based-toothpastes-NOT-whiten-teeth.html].
[90] The Family Dental Center, Mar. 2019, "Beware Whitening Promise of Charcoal Toothpastes," [https://thefamilydentalcenter.com/blog/beware-whitening-promise-of-charcoal-toothpastes/].

are red and irritated from trying to remove the black line."[91] Another Amazon user, "Teressa" reported in a December 3, 2017 review that Cali White's Charcoal Dentifrices "leave[] a black outline around your gums."[92]

79.    These online reports mimic the same phenomenon reported in dentistry journals and publications (going as far back as a 1932 JADA report),[93] and should cause any responsible oral care business to seriously evaluate the safety and effectiveness of its product. Indeed, Cali White was under a continuing duty to warn if its product poses a risk, and its duty could be triggered by new information.

### G.    Cali White Knowingly Made False, Misleading and Deceptive Claims on FDA Approval

80.    Defendant's representation that "Cali White is determined safe for lifetime use by the FDA" is intentionally deceptive and misleading for several reasons. First, it is simply untrue. Upon information and belief, Cali White Charcoal Dentifrices (neither the toothpaste nor the toothpowder) have been FDA approved.[94] Clearly, Cali White would know whether its products have been FDA approved.

81.    Moreover, it is misleading to suggest that the FDA would make such a determination on the Charcoal Dentifrices, as the FDA is not in the business of pre-approving toothpastes or other dentifrices that are fluoride-free (as the Charcoal Dentifrices are). While the FDA's regulatory authority is broad, the parameters of oversight and involvement are set by the

---

[91] Customer Review, AMAZON.COM (December 20, 2017), https://www.amazon.com/gp/customer-reviews/R1OY4H15A19EOZ/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B0732WN74N.

[92] Customer Review, AMAZON.COM (December 3, 2017), https://www.amazon.com/gp/customer-reviews/R2YT71LCQMA73W.

[93] John K. Brooks et al., "Commentaries: More on Charcoal and Charcoal-Based Dentifrices," 148 JADA 785 (2017), [http://dx.doi.org/10.1016/j.adaj.2017.09.027] (quoting S.M. Gordan, "Kramer's Original Charcoal Dental Cream: not acceptable for A.D.R.," 33 *JADA* 912, 912–13 (1946)).

[94] See: https://www.fda.gov/drugs/questions-answers/how-do-i-find-out-if-drug-approved-there-web-site-i-can-go (last accessed December 18, 2019). No results were found through Drugs@FDA nor in the FDA "Orange Book."

type of product ("cosmetic," "drug," or a combination of the two), as well as the claims being made. In this case the Charcoal Dentifrices most reasonably fall under the classification of 'cosmetics,' as they are fluoride-free, do not make any overtly curative health claims (such as "fights cavities"), and are intended to cleanse, beautify or promote attractiveness. The FDA does not evaluate safety or effectiveness, or pre-approve labeling, of cosmetics, and is not in the business of testing or approving a dentifrice that does not contain an approved anticaries agent.[95]

82.    To the extent that Cali White's representation could be interpreted (generously) as a claim that the FDA approves *generally* of a product category of fluoride-free dentifrices that are within a certain RDA range (rather than explicit testing and/or specific approval of a Cali White dentifrice), even that is misleading and does not accurately reflect the FDA's involvement or oversight on such products.

83.    Also misleading, and somewhat absurd, is the claim that an RDA of 114 renders a dentifrice safe. A toothpaste's Relative Dentin Abrasivity, or RDA, is a reference value concerning a dentifrice's abrasive potential. An RDA of 250 is an "upper limit" within the industry, and by this standard *all* dentifrices underneath 250 RDA (i.e., at or below 2.5 times the reference value) are considered "safe and effective." RDA is not a value assessment on the overall safety and efficacy of a toothpaste.

84.    RDA was developed as a standardized scale to reflect a dentifrice's abrasive potential in the context of laboratory testing and manufacturing, in order to conform with methods and standards adopted by the American National Standards Institute/American Dental Association

---

[95] The FDA regulates over-the-counter dentifrices with identified anticaries agents, which are: sodium monofluorophosphate, sodium fluoride, and stannuous fluoride. 21 CFR 355.50. *See also* https://www.ada.org/en/member-center/oral-health-topics/toothpastes (last accessed December 5, 2019).

(ANSI/ADA).[96] It is in this *industrial* context that the 250 RDA serves as a benchmark for safety and effectiveness as it relates to potential abrasion.[97]

85.    While the 250 RDA benchmark is indeed critical to safety, it is a rather crude assessment (anything below 250 is considered safe, and anything above is unsafe) that provides more of a common starting point or safety baseline. The ADA is clear that RDA "**should not be used to rank the safety of dentifrices with RDA values below 250**" because "[t]hese **values do not correspond to potential clinical changes to enamel**."[98]

86.    As such, Cali White's claim of an RDA of 114, if accurate, simply reflects a safety baseline typical of all commercially available toothpastes, not a comprehensive 'score' for overall efficacy and safety. RDA, on its own, does not reflect a dentifrice's longterm abrasive effects on enamel or dentin. The evaluation of a particular dentifrice's safety and efficacy for long-term daily use by consumers is more specific, complex and multifactorial.

87.    Additionally, based on the purported RDA value of 114, Cali White claims "[o]ur charcoal toothpaste is less abrasive than Crest Whitening Toothpaste." For the reasons previously stated, this is deceptive and misleading, as the RDA benchmark is a blunt categorizer, and the ADA has been explicit that, below an RDA of 250, the numerical figures themselves are not useful as valuations of safety or for comparison as to other products that also fall below the 250 RDA threshold. For example, comparison of RDA values does not reflect that one dentifrice contains a potentially hazardous ingredient such as charcoal, and that the other one does not.

---

[96] https://www.ada.org/en/member-center/oral-health-topics/toothpastes (last accessed December 5, 2019) (internal citations omitted).
[97] https://www.rdhmag.com/patient-care/article/16409242/protected-by-a-safe-rda-setting-the-record-straight-about-toothpaste-abrasivity
[98] https://www.ada.org/en/member-center/oral-health-topics/toothpastes (last accessed December 5, 2019) (internal citations omitted).

**H.    Cali White's Claims that the Cali White Charcoal Dentifrices are "Made in California" are False, Misleading and Deceptive**

88.    The CaliWhite.com website prominently displays "Made in California,"[99] with the following logo:



89.    Additionally, the Cali White Charcoal Dentifrice packaging and websites, and indeed the "Cali White" brand name itself, promote that Defendant is a California company. Every package states: "Santa Barbara, California 93105."

90.    Yet nowhere on the CaliWhite.com website is there a business address in Santa Barbara, or anywhere else in California for that matter.

91.    Interestingly, the United Kingdom website for Cali White products does list a Santa Barbara address: "2541 Modoc Rd., Santa Barbara, California 93105 United States."[100] Rather than a commercial facility or anywhere else that one would expect oral care products to be manufactured or packaged, this address corresponds to The Messina Apartment Homes.[101]

92.    California has a robust labeling program for manufactured goods known as "CA Made," the purpose of which is to "encourage consumer product awareness and promote the purchase of products manufactured in California."[102] The program is administered by the

---

[99] https://caliwhite.com/ (last accessed December 2, 2019).
[100] https://uk.caliwhite.com/ (last accessed December 2, 2019).
[101] *See* https://www.messinatownhomes.com/ (last accessed December 2, 2019) (providing an address of 2541 Modoc Road, Santa Barbara, CA 93105).
[102] https://camade.ca.gov/ (last accessed December 2, 2019).

Governor's Office of Business and Economic Development.[103] The program authorizes the use of two logos to denote that a product is "Made in California."[104] For reference, the black iteration of the logo is:



93.     Cali White knowingly and intentionally chose to misrepresent that Cali White products as made in California, and to apply a misleading and unofficial label.  California strictly protects its Made in California label. Pursuant to Section 1770 of the California Civil Code, it is specifically an unlawful unfair method of competition and unfair or deceptive act to "[represent] that a product is made in California by using a Made in California label created pursuant to Section 12098.10 of the Government Code, unless the product complies with Section 12098.10 of the Government Code."[105] Cali White's knowing and intentional misrepresentation that Cali White Charcoal Dentifrices are "Made in California" is a deceptive practice in violation of federal law as well as the state substantive laws of all or some of the 50 states and United States territories where consumers reside.

---

[103] https://camade.ca.gov/ (last accessed December 2, 2019).
[104] *See* https://camade.ca.gov/ (last accessed December 2, 2019) (providing a black version of the logo and a white version of the logo).
[105] Cal. Civ. Code § 1770(a)(27).

**I.    Cali White Intended Consumers' Reliance and Induced Consumers' Purchase of the Charcoal Dentifrices**

94.    Cali White's marketing as a whole was constructed in order to induce consumers to purchase the Charcoal Dentifrices, and to choose them over other products.

95.    Cali White bombards consumers with messaging intended to leave a strong impression that Cali White is a brand that is *particularly* conscientious of health, safety and wellbeing. The Charcoal Dentifrices are branded as "nature's answer to teeth whitening," with an emphasis on their "all natural" ingredients drawn from "Mother Nature" and "planet Earth" (as opposed to "harsh" and "nasty chemicals used in most large retail toothpastes"). The founding corporate mission is said to be "to remove the chemicals from whitening products," and the products omits many ingredients increasingly considered undesirable or unnatural (such as fluoride, peroxide, triclosan, and sodium lauryl sulfate (SLS)), in favor of "naturally" effective ingredients (as well as vegan, cruelty free, and gluten free). Sec. D.

96.    Cali White emphasizes an association with the state of California, in both its name and as the place of development and manufacturing. The heavy California branding includes the brand name "Cali White," a "Made in California" stamp, background history of the company in California, and the use of California imagery. Such branding evokes a certain California-style sensibility that is very health conscious and natural, while also ahead of the curve, quickly growing and even "craft."

97.    Cali White promotes the (unsubstantiated) attributes of activated charcoal, highlighting positive press coverage with Allure, BuzzFeed, Cosmopolitan, and Bustle.[106] It does so despite warnings from dentists and the scientific community about charcoal dentifrices – at best a "marketing gimmick" and, at worst, harmful to teeth, dentistry implants and overall oral health.

---

[106] *See* https://caliwhite.com/.

98.     Most essentially, Cali White's extreme and inaccurate claims concerning the benefits and safety of the Charcoal Dentifrices, are false and misleading, and are also material to a consumer's decision whether to purchase them. Cali White fails to disclose material information that, if known to a consumer, would inform their perception of the claims affirmatively made, and would affect the purchase decision.

99.     Cali White's misleading claims, material omissions, and its false and deceptive marketing campaign as a whole, are likely to deceive (and have deceived) consumers, and are intended to induce reliance and the purchase of one or more of the Charcoal Dentifrices.

**J.      Consumers' Reliance was Reasonable**

100.    Each and every purchaser of the Cali White Charcoal Dentifrices was exposed to Defendant's claims. In addition to online and print marketing and ads, the claims are printed on external cardboard packaging and product labeling.

101.    Consumers reasonably relied on Defendant's claims. The ubiquitous marketing and stylistic branding together foster a reasonable expectation that Cali White is a trustworthy brand, that its claims were legitimate, and that the products were safe and effective. Consumers reasonably relied on the oft-repeated claims that the Cali White Charcoal Dentifrices had whitening and detoxifying[107] properties, were appropriate for daily long-term use (as well as "100% enamel safe" and non-abrasive to gums). Consumer confidence in such claims was bolstered by representations such as "dentist recommended," "clinically proven," and "determined safe for life-time use" by the FDA, which a reasonable consumer would interpret as legitimate third-party endorsements for the safety and effectiveness of the products. Consumers also

---

[107] While the term "detoxifying" is vague and ill-defined, it does convey a common understanding that the product is beneficial to health and appropriate and safe for the intended use.

reasonably relied on the official-looking stamps and claims concerning geographic origin, as well as an insignia designating manufacture in an "FDA Registered Facility."

102.    A reasonable consumer could not practicably test or verify Cali White's claims. Consumers cannot be expected to research the claims made by the sellers they pay for products.

### K.    Cali White's Wrongful Conduct Injured Consumers

103.    Consumers have been harmed by these false and misleading representations and material omissions because they purchased the Charcoal Dentifrices, which were not as represented. Consumers relied on Cali White's claims and were induced to believe that the Cali White Charcoal Dentifrices provide properties, qualities, approvals and safety benefits that other "retail" toothpastes and toothpowders do not, and also that other "natural" toothpastes and toothpowders do not. Each consumer has been exposed to the same or substantially similar misleading and unlawful practices because each product contains identical or substantially similar claims and were sold at a price premium over other toothpastes.

104.    The Cali White website lists $9.99 for the Charcoal and Organic Coconut Whitening Toothpaste, and also indicates a price reduction from the full price of $19.99.[108] The same toothpaste price of $9.99 and purported discount from $19.99 is reflected on Amazon.com.[109]

105.    A comparable toothpaste (fluoride-free, whitening, 'natural' and containing coconut) that does not contain activated charcoal is 'hello antiplaque and whitening fluoride free toothpaste,' which is listed for $4.99 on the hello website.[110] Other commercially available fluoride-free toothpastes are sold for even less, and do not contain the harmful ingredient of charcoal.

---

[108] https://caliwhite.com/collections/cali-white (last accessed December 18, 2019).
[109] https://www.amazon.com/Cali-White-ACTIVATED-WHITENING-TOOTHPASTE/dp/ (last accessed December 18, 2019).
[110] https://www.hello-products.com/product/antiplaque-and-whitening/ (last accessed December 18, 2019).

106.    On its website, 60mg of the Cali White Charcoal Teeth Whitening Powder is listed as $24.99, discounted from an original price of $44.99.[111] Seemingly comparable 'natural' toothpowders that do not contain charcoal can be found online priced at $12.00[112] and $8.99,[113] and powders from the larger mainstream companies are listed for less.

107.    In addition to the price premium paid for falsely promised benefits, consumers have been damaged by the total purchase price, because they purchased a dentifrice that does not provide the basic safety and oral health maintenance that other non-charcoal dentifrices do, whether similarly priced or cheaper.

108.    Upon information and belief, Cali White has been charging at or about the 'discount price' of the respective Charcoal Dentrifices, and not the purported 'full price,' for years. It appears that Cali White's pricing is deceptive, because it misleads customers to believe that they are getting a 'bargain' on a premium product at a significant discount from full price; when, in reality, the 'sale' price is the regular price. This false price reduction and misrepresentation of price is a deceptive and unlawful practice intended to induce consumers to purchase the product while the 'discount' applies. Such pricing practices also unfairly harm competitors who do not price and/or advertise their products in an unlawful and deceptive manner.

109.    Cali White took unfair advantage of its competitors and of its consumers, and has collected substantial profits as a result of their numerous false claims over the benefits and safety of the Cali White Charcoal Dentifrices, as well as their certification and origin. It has done so with knowledge not only that its claims were unsubstantiated, but it also knew or should have known of the potential for serious harm caused by charcoal in dentifrice. Defendant's conduct is immoral,

---

[111] https://caliwhite.com/collections/cali-white (last accessed December 18, 2019). The powder is sold with a toothbrush, and does not appear to be available for purchase on its own.
[112] https://primalpitpaste.com/collections/tooth-powder (last access December 18, 2019).
[113] https://thrivemarket.com/p/redmond-earthpowder-toothpowder-splashin-citrus (last access December 18, 2019).

deceptive, unethical, in violation of public policy, and substantially injurious to consumers as well as competitors. Defendant should not be permitted to retain its substantial benefit from the injuries to Plaintiff and the Classes, nor should it be permitted to continue to benefit from its unfair and deceptive practices.

### L.    Tolling of the Statute of Limitations

110.    Any applicable statute of limitations period should be tolled pursuant to the discovery rule. Plaintiff and other Class members did not and could not, through the exercise of reasonable diligence, have discovered their injury at the time of purchase of a Charcoal Dentifrice, as they made the purchase based on Defendant's misleading and deceptive claims and nondisclosure of material facts. Only after a period of use of the product and/or a negative result from use would *some* the true facts concerning the Charcoal Dentifrice(s) *potentially* be revealed. Even then, the discovery of personal dissatisfaction with the product is not equivalent to discovery of the injury and causes of action at issue in this Complaint. Plaintiff and the Class members could not have reasonably discovered, or been caused to reasonably suspect, the full extent of Defendant's false and misleading claims; or that Defendant failed to disclose material information concerning claim substantiation, product safety and risk of harm; or that Defendant knowingly made claims that lacked the requisite substantiation and/or were false.

111.    Any applicable statute of limitations period should be tolled due to Defendant's continuous engagement in unlawful and deceptive marketing practices. Defendant continuously made false and misleading representations concerning the Charcoal Dentifrices, and failed to disclose the lack of substantiation or the risk of harm from their use, despite its knowledge of the same and of other material information. Defendant's continuous engagement in wrongful behavior may serve to render any statute of limitations applicable.

112.    Any applicable statute of limitations period should be tolled under a theory of estoppel. Defendant was under a continuing duty to disclose to Plaintiff and Class members the facts that it knew concerning the lack of safety substantiation and the risk of harm, and other material information. Defendant is estopped from relying on any statute of limitations in defense of this action.

## V.    CLASS ACTION ALLEGATIONS

113.    Pursuant to CAFA and the Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiff brings this lawsuit as a Class Action on behalf of herself and all other similarly situated members of the Nationwide Class and OK Subclass, as defined below. Plaintiff also brings this suit on behalf of the proposed alternative subclasses, comprised of members who purchased the Cali White Charcoal Dentifrices in states other than Oklahoma, which will potentially be grouped based on material similarity of applicable state laws, as the Court may deem appropriate. The proposed Nationwide Class, OK Subclass and other alternative subclasses are collectively referred to herein as the "Classes." This Class Action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

The Nationwide Class is defined, subject to timely amendment following discovery, as follows:

> All persons who purchased Cali White Charcoal Dentifrices (toothpastes and/or toothpowders) for personal or household dental use within the United States (the "Nationwide Class").

The OK Subclass is defined, subject to timely amendment following discovery, as follows:

> All persons who purchased Cali White Charcoal Dentifrices (toothpastes and/or toothpowders) for personal or household dental use within the state of Oklahoma (the "OK Subclass").

114.    Excluded from the Classes are: (1) Defendant and their subsidiaries, affiliates, employees, officers, directors, assigns, and successors, as well as any entities or divisions in which any of the Defendants have a controlling interest; (2) the Judge to whom this case is assigned to and any member of the Judge's immediate family; and (3) anyone asserting claims for personal injury in connection with the Cali White Charcoal Dentifrices. Plaintiff reserves the right to amend the definition of the Classes if discovery and/or further investigation reveal that the Classes should be expanded or otherwise modified.

115.    **Numerosity**: Each of the Classes are so numerous that joinder of all members is impracticable. The exact number of each of the Classes' members are presently unknown, and can only be ascertained from records maintained by, and in the possession and control of Defendant. However, Plaintiff reasonably estimates that the Nationwide Class consists of tens of thousands of members, and the OK Subclass consists of hundreds of members.

116.    **Commonality and Predominance**: Common questions of law and fact exist as to all members of each of the Classes. These common questions predominate over any questions affecting only individual members of the Classes and include, but are not limited to, the following:

a.    Whether Defendant made and breached an express warranty to the named Plaintiff and the Classes;

b.    Whether Defendant misrepresented the effectiveness of its Charcoal Dentifrices at "detoxifying";

c.    Whether Defendant misrepresented the effectiveness of its Charcoal Dentifrices at "whitening";

d.    Whether Defendant misrepresented the safety of its Charcoal Dentifrices, gentleness on gums and enamel and/or appropriateness for daily long-term use;

e.    Whether Defendant misrepresented that its Charcoal Dentifrices are made in California;

f.      Whether Defendant misrepresented that one or both of its Charcoal Dentifrices had been approved or determined safe for lifetime use by the FDA, or was otherwise certified for safety or quality when it was not;

g.      Whether Defendant made material omissions in its advertising, marketing and labeling of the Charcoal Dentifrices;

h.      Whether Defendant's pricing and price reduction, or statements thereon, reflect a deceptive or unfair trade practice;

i.      Whether the Charcoal Dentifrices were merchantable and fit for normal use, and in accord with statements and promises made on their packaging;

j.      Whether a reasonable consumer would be deceived by Defendant's claims regarding the Charcoal Dentifrices;

k.      Whether the labeling, packaging and marketing of the Charcoal Dentifrices deceived consumers into paying a higher price than they otherwise would;

l.      Whether the acts and omissions of Defendant violated the Oklahoma Consumer Protection Act and/or the Oklahoma Deceptive Trade Practices Act;

m.      Whether Defendant committed statutory deceit as defined under Oklahoma law;

n.      Whether the acts and omissions of Defendant in its advertising, labeling, packaging and marketing the Charcoal Dentifrices violated the Florida Deceptive and Unfair Trade Practices Act and/or other materially similar state consumer protection and deceptive trade practices laws;

o.      Whether Defendant's conduct violated the FTC or other federal laws and regulatory frameworks that constitute *per se* violations of the Florida Deceptive and Unfair Trade Practices Act;

p.      Whether Defendant should be enjoined from the continued unlawful marketing, advertising, promotion, distribution, labeling, and sale of the Charcoal Dentifrices;

q.      Whether Plaintiff and the Classes have sustained an ascertainable loss as a result of Defendant's actions, and the nature and calculation of that loss;

r.      Whether Defendant was unjustly enriched by the sale of the Charcoal Dentifrices and the profits earned therefrom should be disgorged;

s.      Whether Defendant knowingly and intentionally engaged in wrongful and unlawful conduct in connection with the sale, and consumers' purchase of, its Charcoal Dentifrices; and

t.      Whether the actions of Defendant were willful and malicious, or manifested with knowing and reckless indifference and disregard toward the rights of Plaintiff and the Classes; warranting punitive damages.

117.    **Typicality**: Plaintiff's claims are typical of the claims of the proposed Classes, as Plaintiff and all members of the Classes purchased Cali White Charcoal Dentifrices after exposure to the same material misrepresentations and/or omissions appearing the packaging, Defendant's websites, Defendant's listing and claims made on Amazon.com and other online retail platforms, and/or other forms of advertising and marketing. Plaintiff and members of the Classes have suffered the same injury as a result. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent members of the Classes. As alleged above, each consumer has been exposed to the same or substantially similar deceptive practices regardless of whether they purchased the "Cali White Activated Charcoal Teeth Whitening Powder" or the "Cali White Activated Charcoal and Coconut Oil Teeth Whitening Toothpaste" because: 1) each product contains identical or substantially similar claims regarding the benefits of activated charcoal; and 2) the inclusion of activated charcoal in each product gives rise to the harms described herein.

118.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel highly experienced in prosecuting consumer class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of members of the Classes, and have the resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of the Classes.

119.    **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the relatively small size of the claims of

the individual members of the respective Classes, absent a class action, most members would likely find the cost of litigating their claims against Defendant to be prohibitive. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the time and resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The class action device presents no management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CAUSES OF ACTION

### COUNT ONE
*OK Subclass and the Nationwide Class and/or alternative subclass(es)*
**Breach of Express Warranty**
**12A Okla. Stat. § 2-313 and, alternatively,**
**§ 2-313 of the Uniform Commercial Code, as codified by various states**

120.    Plaintiff re-asserts and references the allegations in this Complaint, and incorporates them as if fully set forth herein.

121.    Plaintiff brings this claim under Article 2 of the Uniform Commercial Code (the "UCC") as codified under Oklahoma law at 12A Okla. Stat. § 2-313, and does so individually and on behalf of members of the OK Subclass and the Nationwide Class. Plaintiff alternatively reserves the right to bring this claim on behalf of potential subclasses for the respective states under Section 2-313 of the UCC as it has been adopted, codified and applied by such states (including the Defendant's state of Florida, at Fla. Stat. § 672.313), or alternatively on behalf of potential subclasses to be grouped by materially similar state implementation of § 2-313.

122.    Under Section 2-313 of the UCC, affirmations of fact or promise made by the seller to the buyer, which relate to the goods and are a basis of the bargain, create an express warranty that the goods shall conform to the affirmation or promise.

123.    In connection with the sale of the Charcoal Dentifrices, Defendant issued written express warranties concerning the Charcoal Dentifrices. Express warranties concerning the Charcoal Dentifrices included, but were not limited to:

- "oral detox"

- "teeth whitening" and "whitens teeth"

- "nature's answer to teeth whitening"

- "most effective whitening and detoxifying ingredients on earth"

- "most powerful and natural teeth whitening products in the game"

- "2-8 shades whiter"

- "radical whitening and detox"

- "dentist recommended"

- "clinically proven"

- "100% enamel safe" and "enamel safe"

- "daily oral detox to promote gum health"

- "prevent any gum irritation" and "prevent any abrasiveness to gums"

- "zero tooth sensitivity" and "zero sensitivity"

- "anti-bacterial"

- "determined safe for lifetime use by the FDA"

- "Made in California"

- "a real established company in California"

124.    Defendant's affirmations of fact or promise were made to Plaintiff and members of the Nationwide Class on the product packaging of the Cali White Charcoal Dentifrices, on Cali White website, and in other online sites and print advertising. These affirmations of fact or promise

53

became part of the basis of the bargain between the Defendant on one hand, and Plaintiff and Class members on the other, thereby creating express warranties that the Cali White Charcoal Dentifrices would conform to Defendant's affirmations of fact, representations, and promises.

125.    Plaintiff and Class members were in direct privity with Defendant and/or its agents, or were intended third-party beneficiaries of the warranties breached herein to the extent required by law.

126.    Plaintiff and Class members Class reasonably and justifiably relied on Defendant's express warranties, believing that the Charcoal Dentifrices they purchased would conform to the express warranties.

127.    Defendant breached its express warranties because the Cali White Charcoal Dentifrices do not, in fact conform to the affirmations of fact or promise, and the Charcoal Dentifrices do not perform as expressly warranted.

128.    Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because the Plaintiff and Class members did not receive goods as warranted by Defendant. Plaintiff and Class members did not receive the benefit of the bargain, as the Charcoal Dentifrices did not have the promised benefits, effectiveness, safety, value or other properties as represented.  The Plaintiff and Class members suffered injuries because, had they known the true facts, they would not have purchased the Cali White Charcoal Dentifrices, as compared to similar products that did conform as warranted and represented.

129.    As a direct and proximate result of Defendant's breaches of express warranty, Plaintiff and Class members have been damaged by the difference in value between the Charcoal Dentifrices as advertised and the Charcoal Dentifrices as actually sold, in an amount to be proven at trial.

**COUNT TWO**
*OK Subclass and the Nationwide Class and/or alternative subclass(es)*
**Implied Warranty of Merchantability**
**12A Okla. Stat. § 2-314 and, alternatively,**
**§ 2-314 of the Uniform Commercial Code, as codified by various states**

130.    Plaintiff re-asserts and references the allegations in this Complaint, and incorporates them as if fully set forth herein.

131.    Plaintiff brings this claim under Article 2 of the UCC as codified under Oklahoma law at 12A Okla. Stat. § 2-314, and does so individually and on behalf of members of the OK Subclass and the Nationwide Class. Plaintiff alternatively reserves the right to bring this claim on behalf of respective state subclasses under Section 2-314 of the UCC as it has been adopted, codified and applied by such states (including the Defendant's state of Florida, at Fla. Stat. § 672.314), or alternatively on behalf of potential subclasses to be grouped by materially similar state implementation of § 2-314.

132.    Under Section 2-314 of the UCC, a warranty that the goods shall be merchantable is implied in the contract for their sale, if the seller is a merchant with respect to goods of that kind. To be considered merchantable, the good must be safe and fit for the intended use, and conform to the promise or affirmations of fact made on the label or packaging.

133.    In this case, Defendant qualifies as a merchant, and a warranty of merchantability was implied in the sale of Charcoal Dentifrices to the Plaintiff and Class members. Defendant sold the Charcoal Dentifrices clearly labeled as having certain characteristics. Defendant knew the use for which the Charcoal Dentifrices were intended, and impliedly warranted them to be of merchantable quality, safe, and fit for use.

134.    With each sale of falsely labeled Charcoal Dentifrice to the Plaintiff and Class members, Defendant has breached the implied warranty of merchantability.

135.     Plaintiff and Class members reasonably relied on Defendant's affirmations, as well as the projected trustworthiness of the company. Had the Plaintiff and Class members known of the true nature of the Charcoal Dentifrices and that they were not of merchantable quality, not safe or fit for their intended use, and not in conformance with Defendant's representations, they would not have purchased them, or they would not have been willing to pay the inflated price.

136.     As a direct and proximate result of Defendant's breaches of implied warranty of merchantability, Plaintiff and the Class members have been damaged by the difference in value between the Charcoal Dentifrices as advertised and the Charcoal Dentifrices as actually sold, in an amount to be proven at trial.

**COUNT THREE**
*OK Subclass and the Nationwide Class and/or alternative subclass(es)*
**Deceptive Acts and Practices**
**Violation of the Oklahoma Consumer Protection Act and/or**
**the Oklahoma Deceptive Trade Practices Act**

137.     Plaintiff re-asserts and references the allegations in this Complaint, and incorporates them as if fully set forth herein.

138.     Plaintiff brings this Count individually and on behalf of the members of the OK Subclass and the Nationwide Class, or alternative subclasses with materially similar state law.

139.     Defendant is a "person" within the meaning of the Oklahoma Consumer Protection Act. 15 Okla. Stat. § 752(1).

140.     Defendant engaged in a "consumer transaction" within the meaning of the Oklahoma Consumer Protection Act with regards to the advertisement, offers of sale, sale and distribution of the Charcoal Dentifrices to consumers. 15 Okla. Stat. § 752(2).

141.     Defendant engaged in unlawful practices in the course of its business that violated the Oklahoma Consumer Protection Act including: making false representations, knowingly or

with reason to know, as to the characteristics, ingredients, uses, and benefits of the Charcoal Dentifrices, in violation of 15 Okla. Stat. § 753(5); making false or misleading representations or designations, knowingly or with reason to know, of the geographic origin of the Charcoal Dentifrices, in violation of 15 Okla. Stat. § 753(4); making a false or misleading representation, knowingly or with reason to know, as to the sponsorship, approval or certification of the Charcoal Dentifrices, in violation of 15 Okla. § 753(2); representing, knowingly or with reason to know, that the Charcoal Dentifrices were of a particular standard when they were of another, in violation of 15 Okla. Stat. tit. § 753(7); and making a false or misleading statements of fact, knowingly or with reason to know, concerning the price of the Charcoal Dentifrices, or the reason for, existence of, or amounts of price reduction, in violation of 15 Okla. Stat. tit. § 753(11).

142.     Defendant's engagement in unfair and deceptive trade practices (as defined at 15 Okla. Stat. § 752) in the course of its business and with regards to the advertisement and sale of the Cali White Charcoal Dentifrices also constitute unlawful practices in violation of the Oklahoma Consumer Protection Act, 15 Okla. Stat. § 753(20). Defendant committed deceptive trade practices within the meaning of the Oklahoma Consumer Protection Act because its misrepresentations, omissions or other practices deceived or could reasonably be expected to deceive or mislead a person, to the detriment of that person. 15 Okla. Stat. § 752(13). Defendant committed unfair trade practices within the meaning of the Oklahoma Consumer Protection Act because its practices offend established public policy and wee immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers. 15 Okla. Stat. § 752(14).

143.     Furthermore, pursuant to the Oklahoma Deceptive Trade Practices Act, "[a] person engages in a deceptive trade practice when in the course of business, vocation, or occupation, the person [. . .] [u]ses deceptive representations or designations of geographic origin in connection

with goods or services." 78 Okla. Stat. § 53(A)(4). It is similarly unlawful for a person to "[k]nowingly make[] a false representation as to the characteristics, ingredients, uses, benefits or quantities of goods or services [. . .]." 78 Okla. Stat. § 53(A)(5).

144.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices. These acts and conduct include, but are not limited to, Defendant's misrepresentations and deceptive claims that the Charcoal Dentifrices (i) whiten teeth, (ii) detoxify the mouth, (iii) are safe for long-term daily use, (iv) promote and protect gum health, (v) are safe for enamel; (vi) are clinically proven, (vii) are dentist recommended, (viii) are approved by the FDA, (ix) are offered at a price reduction, and (x) are made in California.

145.    Defendant's unlawful conduct also included omitting material facts, such as failing to disclose to consumers that (i) its safety and efficacy claims lacked a reasonable factual basis and/or competent scientific substantiation; and (ii) the long-term use of charcoal in dentifrice was unsupported and counter-indicated in scientific literature, and published findings reflected potential negative results to oral health and aesthetics. Cali White failed to warn consumers of the lack of substantiation, and failed to warn consumers of risk or potential harm.

146.    Cali White knew, or had reason to know, that the foregoing misrepresentations, omissions and other practices were false and/or misleading. Cali White's misrepresentations and omission were material to consumers, and made in order to induce consumers' reliance and purchase of the Charcoal Dentifrices (and at a price premium). Cali White's deceptive practices could reasonably be expected to mislead, and did in fact mislead reasonable consumers, including Plaintiff and Class members.

147.    As a direct and proximate cause of Cali White's deceptive practices and unlawful conduct, Plaintiff and Class members have suffered, and continue to suffer, economic injuries.

Plaintiff and Class members purchased one or more of the Charcoal Dentifrices, which did not possess the benefits, effectiveness, true value, safety and other qualities that Cali White had represented. Had they known the true facts, they would not have purchased the Charcoal Dentifrices, or would have paid less. Plaintiff and Class members were damaged by the difference in value between the Charcoal Dentifrices as advertised and the Charcoal Dentifrices as actually sold.

148.    Pursuant to the Oklahoma Deceptive Trade Practices Act, "[e]vidence that a person has engaged in a deceptive trade practice shall be prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition." 78 Okla. Stat. § 53(B). The conduct of Cali White described herein has injured competitors and impacted free and fair competition in the marketplace.

149.    For violations of the Oklahoma Consumer Protection Act, and the Oklahoma Deceptive Trade Practices Act, and pursuant to 15 Okla. Stat. § 761.1 and 78 Okla. Stat. § 54, Plaintiff, on behalf of herself and Class members, seeks to recover actual damages sustained; the imposition of a civil penalty per violation of the Oklahoma Consumer Protection Act; to recover reasonable attorneys' fees and costs; and any other statutorily available damages or relief the court deems proper.

150.    Further, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in unlawful, unfair, deceptive, and/or fraudulent business practices, or any other conduct prohibited by the Oklahoma Deceptive Trade Practices Act or other law. 78 Okla. Stat. § 54(A). Plaintiff and the OK Subclass members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. The unfair and deceptive acts and practices of

Defendant, as described above, present a serious threat to Plaintiff and Class members, as well as to the general consuming public and competitive marketplace.

**COUNT FOUR**
*OK Subclass and/or the Nationwide Class and/or alternative subclass(es)*
**Deceit**
**Violation of 76 Okla. Stat. §§ 1-4**

151.    Plaintiff re-asserts and references the allegations in this Complaint, and incorporates them as if fully set forth herein.

152.    Plaintiff brings this Count individually and on behalf of the members of the OK Subclass and the Nationwide Class and alternatively, any alternative subclasses with materially similar state law.

153.    Under Oklahoma law, "[o]ne who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." 76 Okla. Stat. § 2.

154.    Oklahoma law defines a deceit as either: "[1] [t]he suggestion, as a fact, of that which is not true by one who does not believe it to be true; [2] [t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true; [3] [t]he suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or [4] [a] promise, made without any intention of performing." 76 Okla. Stat. § 3.

155.    Oklahoma law provides that "[o]ne who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." 76 Okla. Stat. § 4.

156.    Defendant made multiple false and misleading marketing claims that were material representations regarding the characteristics of the Cali White Charcoal Dentifrices, and that

Defendant knew to be untrue and/or did not believe to be true and/or had no reasonable basis to believe to be true. These include, but are not limited to claims that the Charcoal Dentifrices (i) whiten teeth, (ii) detoxify the mouth, (iii) are safe for long-term daily use, (iv) promote and protect gum health, (v) are safe for enamel; (vi) are clinically proven, (vii) are dentist recommended, (viii) are approved by the FDA, (ix) are offered at a price reduction, and (x) are made in California.

157.    Defendant also deceivingly suppressed facts it was obligated to disclose to consumers, including that (i) its safety and efficacy claims lacked a reasonable factual basis and/or competent scientific substantiation; and (ii) the long-term use of charcoal in dentifrice was unsupported and counter-indicated in scientific literature, and published findings reflected potential negative results to oral health and aesthetics. Cali White failed to warn consumers of the lack of substantiation, and failed to warn consumers of risk or potential harm. Defendant either knew that of these adverse facts and the risk, and of its obligation to disclose and warn, and/or it recklessly ignored this information, and it did so while making other positive assertions and misrepresentations that were untrue or made without any reasonable basis in truth.

158.    Defendant willfully made its deceptive marketing claims with the intention that they induce consumers, including Plaintiff and Class members, to purchase the Cali White Charcoal Dentifrices.

159.    In reliance upon, and misled by Defendant's deceitful marketing claims, Plaintiff and the Class members purchased one or more of the Charcoal Dentifrices, and suffered damages as result, in the amount of the purchase price and/or price premium paid.

160.    Plaintiff and Class(es) are entitled to recover their actual damages under 76 Okla. Stat. § 2.

**COUNT FIVE**
*Alternative Nationwide Class, or alternative subclass(es)*
**Violation of Florida Deceptive and Unfair Trade Practices Act § 501.201 *et seq.*, and/or Violations of Materially Similar State Consumer Protection and Deceptive Trade Practices Laws**

161.   Plaintiff re-asserts and references the allegations in this Complaint, and incorporates them as if fully set forth herein.

162.   Defendant's acts, omissions, and practices described herein are in violation of multiple states' consumer protection, unfair competition and deceptive trade practices laws that may apply to currently unknown members of the Nationwide Class who made their purchase in U.S. states other than Oklahoma. For purposes of manageability, and to the extent the same questions of fact and law predominate, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is pled herein. Alternatively, and as a separate and alternative theory of recovery to the other Counts alleged herein, various subclasses might be created for the application of other states' laws, or to be grouped based on materially identical state laws.

163.   Plaintiff brings this claim alternatively on behalf of a putative set of subclasses or alternative nationwide class, loosely termed the Classes herein.

164.   The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

165.   The FDUTPA is to be "construed liberally to promote" its stated purposes, including to "make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection. Fla Stat. § 501.202(3). In construing the FDUTPA, "due consideration and great weight shall be given to the interpretation of the Federal Trade

Commission and the federal courts relating to § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1)." Fla. Stat § 501.204(2).

166.    Defendant has engaged in a pattern of business practices that are unfair, deceptive, unconscionable and anti-competitive, and that affected Plaintiff and members of the Classes, in violation of the FDUTPA. Defendant's conduct also violates other laws, rules and regulations that protect consumers and/or prohibit unfair methods of competition, unfair or deceptive acts or practices, and such violations constitute *per se* violations of the FDUTPA. Fla. Stat § 501.203(3).

167.    Plaintiff is a "consumer" within the meaning of the FDUTPA. Fla. Stat. § 501.203(7).

168.    Defendant is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

169.    Defendant's unlawful acts and practices include, but are not limited to, its misrepresentations and deceptive claims that the Charcoal Dentifrices (i) whiten teeth, (ii) detoxify the mouth, (iii) are safe for long-term daily use, (iv) promote and protect gum health, (v) are safe for enamel; (vi) are clinically proven, (vii) are dentist recommended, (viii) are approved by the FDA, (ix) are offered at a price reduction, and (x) are made in California.

170.    Defendant also omitted the disclosure of material facts to consumers concerning the Cali White Charcoal Dentifrices, including that (i) its safety and efficacy claims lacked a reasonable factual basis and/or competent scientific substantiation; and (ii) the long-term use of charcoal in dentifrice was unsupported and counter-indicated in scientific literature, and published findings reflected potential negative results to oral health and aesthetics.

171.    Defendant's conduct and practices were likely to deceive a reasonable consumer acting reasonably in the circumstances.

172.    Defendant's misrepresentations and omissions and other practices were intended to induce consumers, including Plaintiff and members of the Classes, to purchase the Charcoal Dentifrices.

173.    Defendant's conduct constituted unfair and deceptive trade practices in violation of Section 5 of the FTC Act. 15 U.S.C. § 45. Defendant's representations, omissions and other practices were material and likely to mislead a consumer acting reasonably in the circumstances, and its deception caused the Plaintiff and Class members to reach false beliefs about the Charcoal Dentifrices, and also affected their reasonable decision to purchase.

174.    Defendant's conduct violated the FTC Act's prohibition against the dissemination of false or misleading advertisements of food, drugs and cosmetics. 15 U.S.C. § 52. The term "false advertisement" means an advertisement, other than labeling, which is misleading in a material respect. 15 U.S.C. § 55(a)(1). Defendant made many false and unsubstantiated claims in its advertising, and furthermore, claimed to have a level of substantiation or support which it did not in fact possess.

175.    Defendant caused the Charcoal Dentifrices to be misbranded as defined under 21 U.S.C. § 263 and under 21 CFR 1.21, and otherwise mislabeled the Charcoal Dentifrices in contravention of federal laws, rules and regulations.

176.    Defendant violated the Fair Packaging and Labeling Act and the FTC and FDA regulations implementing it. 16 CFR 500-503.

177.    Defendant's conduct violated the FD&C Act's prohibition on the marketing and movement in interstate commerce of misbranded cosmetics. 21 U.S.C. § 331.

178.    Defendant's conduct violated FTC and FDA rules and regulations requiring that Defendant have a reasonable basis and competent substantiation for the various claims and

representations it made concerning the Charcoal Dentifrices in the labeling, packaging, advertisements and marketing of the Charcoal Dentifrices.

179.    Defendant failed to provide a warning to consumers that it lacked adequate substantiation of its claims, and/or to warn of the risk and potential harm from use of its products, in violation of federal rules and regulations including 21 CFR 740.10.

180.    Defendant's pricing and advertising practices violated FTC Rules concerning deceptive pricing at 16 CFR 233.

181.    Defendant affirmatively made false and misleading representations concerning FDA approval that the Charcoal Dentifrices did not in fact possess.

182.    Defendant knew or should have known that its conduct was unfair or deceptive, and/or prohibited by rule.

183.    As a direct and proximate result of Defendant's statutory violations and deceptive, misleading and unfair practices, Plaintiff and the members of the Classes have been aggrieved, injured and suffered damages in the amount of the purchase price(s) of the Cali White Charcoal Dentifrice(s) they purchased and/or the price premium paid.

184.    Defendant has engaged in, and continues to engage in, unfair and deceptive practices that offend public policies, and are immoral, unethical, unscrupulous and substantially injurious to consumers. Plaintiff and members of the Classes risk irreparable injury as a result of Defendant's violations of the FDUTPA, and these violations present a continuing risk to Plaintiff, the Classes, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest, consumer safety and the competitive market.

185.    Pursuant to Fla. State §§ 501.211(2) and 501.2105, Plaintiff and the Classes make claims for damages, attorneys' fees and costs.

186.    Pursuant to Fla. Stat. § 501.211(1), Plaintiff and the Classes seek a declaratory judgment and court order enjoining the wrongful acts and practices of Defendant,

187.    Plaintiff and the Classes also seek an order for the restitution and disgorgement of Defendant's ill-gotten gains, and for statutory penalties of $10,000 *per violation* for Defendant's willful violations of the FDUTPA (Fla. Stat. § 501.2075), and for any other just and proper relief available under the FDUTPA.

188.    Alternatively, Plaintiff alternatively alleges that Defendant violated the substantive laws of all or some of the 50 states and United States territories where consumers reside, and seeks recovery and other relief thereunder, or alternatively under other materially identical state laws as may be applied to alternative subclass(es) comprised of Class members from states deemed to have materially identical state laws.

## COUNT SIX
### *Nationwide Class and OK Subclass and/or alternative subclass(es)*
### Intentional or Negligent Misrepresentation

189.    Plaintiff re-asserts and references the allegations in this Complaint, and incorporates them as if fully set forth herein.

190.    Plaintiff brings this Count individually and on behalf of the members of the Nationwide Class and the OK Subclass. Alternatively, and as a separate and alternative theory of recovery, various subclasses might be created for the application of other states' laws, or to be grouped based on materially identical state laws.

191.    Defendant had a duty to provide a non-deceptive and lawful description of the benefits, safety, effectiveness, true value or other properties of the Charcoal Dentifrices, and to not conduct itself in contravention of public policy. Defendant had statutory duties as to the product labelling and advertising claims on the Charcoal Dentifrices, which included being truthful and

non-misleading, to have a reasonable basis and proper substantiation for the claims made, and in proportion to any claimed level of substantiation.

192.    In its product packaging, labeling, marketing and advertising, Defendant made false and misleading representations and material omissions to Plaintiff and the Class members, and/or omitted the disclosure of material facts. Defendant knew or should have known the representations and omissions rendered its claims on the Charcoal Dentifrices false or misleading. Defendant acted without reasonable grounds for believing the representations were true, and intended that said representations induce reliance of the Plaintiff and Class members.

193.    Defendant owed a duty of care to the Plaintiff and Class members to give appropriate warnings about all dangers and risks associated with the intended use of the Charcoal Dentifrices, of which they were aware or should have been aware. Defendant was under a continuing duty to warn and instruct the intended and foreseeable consumers of the Charcoal Dentifrices, including Plaintiff and the Class members, of the same. Defendant was negligent and breached its duty of care by negligently failing to give adequate disclosures and warnings. Defendant knew that Plaintiff and the Class members could not reasonably be aware of these risks.

194.    Plaintiff and Class members reasonably and justifiably relied upon the Defendant's representations and omissions, which were in violation of Defendant's duties.

195.    As a direct and proximate result of Defendant's wrongful conduct and breach of duties, Plaintiff and Class members have suffered and continue to suffer injury, including but not limited to the amounts paid for the Cali White Charcoal Dentifrices.

## COUNT SEVEN
### *Nationwide Class and OK Subclass and/or alternative subclass(es)*
### Unjust Enrichment

196. Plaintiff re-asserts and references the allegations in this Complaint, and incorporates them as if fully set forth herein.

197. Plaintiff brings this Count individually and on behalf of the members of the Nationwide Class and the OK Subclass. Alternatively, and as a separate and alternative theory of recovery, various subclasses might be created for the application of other states' laws, or to be grouped based on materially identical state laws.

198. As a result of Defendant's deceptive, fraudulent and misleading labeling, advertising, marketing and sales of the Charcoal Dentifrices, Defendant was enriched at the expense of Plaintiff and other members of the Class, through the purchase price payments for the Charcoal Dentifrices. The Charcoal Dentifrices did not have the benefits, safety, effectiveness, true value or other properties that Defendant represented them to have.

199. Because the Cali White Charcoal Dentifrices were not as Defendant purported them to be, it is unequitable and unjust to permit Defendant to retain its ill-gotten financial benefits from the sale of the Charcoal Dentifrices. Therefore, Plaintiff and the Class seek disgorgement and restitution of such financial benefits, as set forth below.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated in the OK Subclass, the Nationwide Class, and any other created subclasses, prays for relief as follows:

(a) Certification of this case as a class action, and of the Nationwide Class and OK Subclass proposed herein (and any other subclasses) under the Federal Rules of Civil Procedure,

designation of the Plaintiff as the representative of the Classes, and appointment of the undersigned counsel as counsel for the Classes;

(b) An order enjoining Defendant from making further misrepresentations regarding the Cali White Charcoal Dentifrices, including but not limited to statements that the Charcoal Dentifrices:

    a.  Whiten teeth;

    b.  Detoxify the mouth;

    c.  Are safe for long-term daily use;

    d.  Promote and protect gum health;

    e.  Are safe for enamel;

    f.  Are clinically proven;

    g.  Are dentist recommended;

    h.  Are approved by the FDA;

    i.  Are offered at a price reduction;

    j.  Are made in California.

(c) An order requiring Defendant to issue appropriate corrective advertisements, and to retract its prior false and misleading claims;

(d) Restitution, disgorgement, refund and/or return of all monies, revenues and profits obtained by Defendant by means of misleading, deceptive and unlawful acts or practices;

(e) Actual damages in an amount to be determined at trial;

(f) Statutory damages in the maximum amount provided by law;

(g) Punitive damages;

(h)  Costs, expenses, and reasonable attorneys' fees pursuant to applicable statutes;

(i)  Pre-judgment and post-judgment interest; and

(j)  All such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiff and the Classes hereby demand a jury trial of the claims asserted in this Complaint.

Dated: December 23, 2019                       Respectfully submitted,

                                               /s/ *William B. Federman*
                                               William B. Federman
                                               (OBA # 2853)
                                               FEDERMAN & SHERWOOD
                                               10205 N. Pennsylvania Ave.
                                               Oklahoma City, Oklahoma 73120
                                               (405) 235-1560
                                               (405) 239-2112 (facsimile)
                                               wbf@federmanlaw.com

                                               *Counsel for Plaintiff Samantha Hartanovich*
                                               *and the Proposed Classes*